## PRESTRIDGE v. LAZAR.

[95 South. 837.  No. 22921.]

1. SUBROGATION.  *Operation of doctrine.*

> The doctrine of subrogation is one of equity and benevolence, its basis is the doing of complete and essential justice between the parties without regard to form, its object is the prevention of injustice, and it rests upon principles of natural equity. The court should rather incline to extend than restrict the operation of the doctrine. It applies wherever any person, other than a mere volunteer, pays a debt or demand which in equity or good conscience should have been satisfied by another, or where one person finds it necessary for his own protection to pay the debt for which another is primarily liable, or where one has such an interest in property as makes it necessary for him to get in an outstanding claim or equity for its protection.

2. SUBROGATION.  *Vendee of land contract paying mortgages out of purchase money entitled to subrogation, where subsequent mortgage disclosed.*

> Where a vendee of land, in order to clear the title of incumbrances with the consent of the vendor discharged out of the purchase money two mortgages, given on the land by the latter, which were prior mortgages, and afterwards the vendee learned that there was an unsatisfied subsequent mortgage on the land given by the vendor, of which the vendee had no knowledge or information at the time he paid the purchase money, *held*, the vendee was entitled to be subrogated to the rights of the two mortgagees in the mortgages so discharged by him to the extent of the amount paid by him in their discharge, and in equity said mortgages will be revived for the benefit of the said vendee, and have priority over said third mortgage.

APPEAL from chancery court of Pike county.

HON. R. W. CUTRER, Chancellor.

Suit by W. E. Prestridge against A. J. Lazar.  From a decree for defendant, plaintiff appeals.  Reversed, and judgment for plaintiff.

See, also, 94 So. 799.

*F. D. Hewett,* for appellant.

The cases all cited by the appellee, A. J. Lazar, when analyzed and differentiated, have very little, if any, bearing on the present case. The case of the *Union Mortgage, Banking & Trust Company et al. v. Peters et al.,* in 18 So. 497, cited by the appellee, is authority for the contention of the appellant Prestridge. On page 500 of that case the court answers the objections and says: "First. One who, at the instance of the debtor, advances money to be used by the debtor in payment of a prior security is not a stranger and intermeddler in his affairs. Shield, Subr. 247; *Wilton* v. *Mayberry* (Wis.), 43 N. W. 901, etc. Second. The fact that the mortgage was paid and intended to be paid is immaterial. Equity will consider it as yet alive so long as the rights of parties require. *Walker* v. *King,* 45 Vt. 525; *Cobb* v. *Oyer,* 69 Me. 494; *Wheeler* v. *Wullard,* 44 Vt. 640; *Barnes* v. *Mott,* 64 N. Y. 397; *Loan Co.* v. *Bailock,* 76 Tex. 85, 13 S. W. 12; *Crippen* v. *Chappel,* 35 Kan. 495, 11 Pac. 453; *Cansler* v. *Sallis,* 54 Miss. 446. "The *status quo ante* the cancellation of the securities should be restored; the appellants held to account as mortgagees in possession of the land entitled to charge against it all prior incumbrances discharged by the money they loaned." The appellee does not cite any Mississippi case in support of his contention, in fact all of the Mississippi cases hold that any person who advances the money for the purchase price of the land is subrogated to all the rights and equities of the person holding the securities.

Third. That a cancellation of the record of a mortgage does not bar the right of a person, nor the application of the doctrine of subrogation, but that a court of equity will hold alive and enforce the rights of persons entitled to them.

In the instant case, Prestridge being just a plain farmer, at the request of debtor who owed, according to the undisputed testimony, three thousand one hundred dollars or more the purchase price of the land, advanced the

money to pay off and discharge prior liens, and that the same by mistake and oversight, was cancelled on the record, but not to the prejudice of Lazar. The undisputed testimony is that Prestridge paid the money to Lampton and just how the chancellor could render a decision giving to Lazar a first mortgage to the extent of nine hundred ninety-three dollars, is not easily understood. Prestridge was subrogated to the rights of Lampton; and as there was a balance of three thousand one hundred dollars due Lampton on the purchase price of the land, the court was certainly wrong in ordering the land sold and nine hundred ninety-three dollars be paid to Lazar first. The court should have ordered the land sold at public auction and that Prestridge first be paid the amount of the purchase price, four thousand dollars, and if not four thousand dollars, certainly three thousand one hundred dollars with cost and expenses and the balance, if any, paid to Lazar on his whole note of one thousand three hundred twenty dollars.

The undisputed testimony is that Prestridge furnished the money to discharge the mortgage executed for the purchase money. He was, therefore, subrogated to the rights of Lampton. In the case of the *American Trust & Savings Bank* v. *Turner et al.*, 80 So. 176, the Alabama court holds: "One who pays off another's obligation, secured by mortgage, or advances money for its payment, at the instance of the debtor and for his benefit, is not a mere stranger or 'volunteer,' but is entitled to subrogation to the rights of the original creditor."

In the case of *Good* v. *Golden et al.*, 19 So. 100, the court holds: "That one who pays off the debt of another is entitled to subrogation," and that is held in a number of Mississippi cases. *Howell* v. *Busch*, 54 Miss. 437; *Nixon* v. *Julian*, 72 Miss. 570; *Conway* v. *Strong*, 24 Miss. 665; *Cansley* v. *Salis*, 54 Miss. 446.

The doctrine of subrogation is ably discussed in Bispham's Principles of Equity (7 Ed.) par. 335. It holds that one who pays off the mortgage executed for the pur-

chase price of land will be subrogated to the rights of the original creditor, in order that exact justice may be done between the persons, and that even though the mortgage is cancelled equity will keep alive the security for the benefit of the person advancing the money.

It was held in a case in South Carolina, decided in 1893, that where a *bona-fide* purchaser at a void judicial sale, who thought he was taking a good title, has paid his bid and the money has been applied to the payment of a mortgage debt, he is entitled to be subrogated to the rights of the mortgagee.  Upon the same ground it was held in *Everston* v. *Central Bank,* that where money was loaned on a forged mortgage, was applied to a prior and valid mortgage, the mortgagee, under the forged mortgage, could successfully claim to be subrogated to the rights of the prior mortgage. Bispham's Principles of Equity, pages 481 and 482, it holds: "But where a debtor borrows money for the purpose of discharging a lien, the person advancing the money may be subrogated by the debtor to the creditor's right, and is not deemed a volunteer."

There is no question in the instant case that equity will hold that Prestridge is subrogated to the rights of Lampton and will keep alive the mortgage, because Lazar is not hurt at all, and his claim is not prejudiced, Lazar loaned the money knowing that there was four thousand dollars due on it, and at the time Prestridge bought it and took up these mortgages he was not an intervening lienor, and Lazar cannot say that what Prestridge did in any way injure him, and therefore, he cannot complain if Prestridge asked the court to put the land up and sell it so as to return him his money.

We respectfully urge that the court reverse this case and render judgment for the appellant.

*C. T. Gordon* and *Price & Price,* for appellee.

Counsel, in his brief, cites but one authority—*Robertson* v. *Sullivan et al.,* 59 So. 846, which, from our viewpoint

is not applicable here. That decision announces a wise, wholesome and righteous doctrine. In that case Mrs. Sullivan was not a volunteer, as in the case at bar, but she had a vested equity and interest in the property by virtue of inheritance, and so did her children, but in the case at bar Prestridge was a mere volunteer, had no interest in the property and no interest to serve and volunteered without any investigation of the record, to pay off the balance due on two mortgages without ever investigating the record to see whether or not Lazar had been paid, and in the face of Lazar's mortgage he voluntarily paid Daughtery nine hundred ninety-three dollars and seventeen cents.

In *Purnell* v. *Gillespie,* decided by this court, June 13, 1921, 88 So. 637, it is said: "Whether the payment to the holder of a promissory note by a stranger thereto of the amount due thereon is a payment and discharge of the note or a purchase of it depends on the intention of the parties to that transaction; particularly on the intention of the holder of the note." Norton on Bills & Notes (4 Ed.) 401; 3 R. C. L. 1286; 8 C. J. 588.

It will be observed that there was no intention on the part of the holder of the note, or the maker, or of Prestridge, to have the note transferred, but it was the intention of all these parties that the trust deed would be canceled and that Daughtery would make Prestridge a deed.

It will be observed that there was no intention on the part of the holder of the note, or the maker, or of Prestridge, to have the note transferred, but it was the intention of all three of the parties that the trust deed would be canceled and that Daughtery would make Prestridge a deed. "This is but an application of a familiar rule of law, that where one of two innocent parties must suffer, the loss must fall on the one whose act permitted the other to be defrauded." Prestridge is not innocent in the transaction. It was in his power and was his duty to at least be reasonably careful in purchasing the land, and if he had done so, Daughtery no doubt, would have applied

all the cash on the Lazar note and such of the personal property as was necessary to pay the small difference. *Union Bank Mortgage Co.* v. *Peters,* 72 Miss. 1058; *Powell* v. *Bush,* 54 Miss. 437; 25 R. C. L.; page 1354, sec. 38; Amer. Anno. Cases, 1914-B, page 570; Amer. State Reps. 118, page 332; 44 L. R. A. (N. S.) 1189.

"An independent purchaser of land incumbered with liens, who has no interest therein and no other equitable claim cannot assume the payment and pay such lien or liens as he may choose and claim subrogation against all inferior liens." *Garwood* v. *Eldridge,* 34 Amer. Decs., page 195; *Kahn* v. *McConnell,* 47 L. R. A. (N. S.) page 1190.

In the matter of that payment he was a volunteer. He was under no duty to buy the land. He was under no duty to pay the first mortgage. He was negligent in doing so without examining the records, and cannot escape the consequence of his own negligence by an appeal to the equitable doctrine of subrogation. *Vigilantibus non dorminentibus aequitas subvenit.* In *Campbell* v. *Hamilton,* — Tenn. —, 39 S. W. 895, it is said in the syllabus: "The fact that a purchaser who paid a mortgage on the land as part of the consideration, and secured the release thereof, did so at the time of the purchase, made it none the less a case of assumption of the mortgage, disentitling him to subrogation."

In *Stanstny* v. *Pease,* 124 Iowa, 587, 100 N. W. 482, it is said in the syllabus: "The purchaser of real property has constructive notice of an existing judgment lien; and, where by agreement with his grantor he discharges prior liens in part payment of the purchase price, the judgment becomes a first lien upon the property, and neither the doctrine of equitable assignment nor subrogation applies."

In *Demourelle* v. *Vincent Piazza,* 77 Miss. 433, the court says: "A volunteer purchaser of lands from two of three tenants in common who are ordered by a decree of the chancery court to pay a sum of money in default of which the land is decreed to be sold, the third tenant not participating in the sale or being a party to the decree, does not

by subrogation acquire a right under the decree or the interest of the third tenant in the land, although the money paid by him was used in satisfying the decree." The fact that a volunteer buys land in good faith and pays full value therefor cannot supply a lack of title in his grantors.

Under the authorities cited, the first and second mortgages on this property were paid off by a mere volunteer with no rights, interests or equities in the property and the mortgages were in contemplation of the intention of the holder and the maker, canceled in the presence of Prestridge without any protest or explanation and said mortgages were therefore canceled without the right of subrogation and the Lazar trust deed, by virtue thereof, became and is now a first lien on the property for the full amount of one thousand three hundred twenty dollars, interest from its date with ten per cent attorney's fees and the decree of the lower court ought to be affirmed on direct appeal and reversed on cross appeal, and a decree here for the full amount of the Lazar trust deed.

ANDERSON, J., delivered the opinion of the court.

The question involved in this case is one of subrogation. The appellant, W. E. Prestridge, sought by his bill against A. J. Lazar, the appellee, to be subrogated to the rights of two prior mortgages of lands owned by appellant on which appellee had a third mortgage. The trial court rendered a decree against appellant in favor of appellee, from which the former prosecutes this appeal.

The facts necessary to an understanding of the question involved are as follows: The appellant bought certain land from one Daughtery for which he paid four thousand dollars, as follows: He discharged two mortgages on said land, one in favor of Mechanics' Bank of McComb for two thousand one hundred eight dollars and sixty-one cents, and the other in favor of Frank Lampton in the sum of nine hundred fifty-nine dollars and forty-two cents,

and the balance, nine hundred ninety-three dollars and seventeen cents, he paid to the vendor, Daughtery, in cash. Appellant was ignorant of the fact that appellee held a mortgage against said land for one thousand three hundred twenty dollars junior to those of the Mechanics' Bank and Lampton. He thought, when he discharged out of the purchase money of said land the said two prior mortgages, that the title was clear of all incumbrances. Appellant later, however, learned of appellee's said mortgage. Besides his mortgage on the land involved, Lampton held as collateral security for his indebtedness some notes which Daughtery had placed with him. When appellant purchased the land and paid the purchase money in the manner stated, the remainder of these notes unpaid, held by Lampton as collateral, were surrendered to Daughtery. Daughtery took the cash paid him by appellant, being the balance of the purchase money going to him after paying said two mortgages, and fled the country. The mortgages in favor of Lampton and Mechanics' Bank, as well as the notes which they secured, were surrendered, and the former canceled on the record. This left on record appellee's mortgage alone.

Appellee contends that appellant owns the lands involved, subject alone to his mortgage. On the other hand, appellant contends that, under the facts stated, the mortgages of the Mechanics' Bank and Lampton which were discharged out of the purchase money which he paid Daughtery should be revived for his benefit, and he substituted to all the rights thereunder of said bank and Lampton as of the date of their payment. Appellee contends that appellant is not entitled to subrogation to the rights of said mortgagees, because appellant in discharging said mortgages was a mere volunteer; that he was under no obligation to pay the same.

Appellant contends that he was not a volunteer in discharging said mortgages for the purpose of freeing the title to said land. The reason and philosophy of the principle involved should be kept in mind in determining this ques-

tion. The doctrine of subrogation is "one of equity and benevolence; . . . its basis is the doing of complete, essential, and perfect justice between the parties, without regard to form, and its object is the prevention of injustice." It does not rest on contract, but upon principles of natural equity. The courts should rather incline to extend than restrict the operation of the doctrine. It applies wherever any person other than a mere volunteer pays a debt or demand which in equity and good conscience should have been satisfied by another, or where one person finds it necessary for his own protection to pay the debt for which another is primarily liable, or where a party has such an interest in property as makes it incumbent on him to get in an outstanding claim or equity for its protection. *Robinson* v. *Sullivan,* 102 Miss. 581, 59 So. 846.

*McIntyre* v. *Agriculture Bank,* Freem. Ch. 105, and *Ligon* v. *Barton,* 88 Miss. 135, 40 So. 555, are in our judgment decisive of this question in favor of appellant. Under the facts of this case it seems eminently just that appellant should be subrogated to the rights of the bank and Lampton under their mortgages. Appellant in the utmost good faith thought, when he discharged those mortgages, his land was free. Doubtless, if he had not thought so, he would have taken an assignment from Lampton and the bank of their rights under said mortgages, and certainly that would have protected appellant against the mortgage of appellee; and furthermore the principle works no injustice to appellee. When appellant bought the land from Daughtery, Lampton and the bank held mortgages prior to that of appellee aggregating three thousand one hundred dollars. By the application of the doctrine of subrogation as here made that exact *status* is restored, except that appellant, instead of Lampton and the bank, will hold prior mortgages in the sum of three thousand one hundred dollars to that of appellee. Certainly that is working out natural justice; while, on the other hand, if the appellee's

contention should prevail great injustice would be done appellant.

There is some contention made to the effect that appellant is not entitled to subrogation to the rights of Lampton and the bank, at least to the extent of the value of the collateral notes held by Lampton, which were surrendered to Daughtery, when appellant's purchase of the land was consummated. As we understand the record, this question is not presented by the pleadings, and furthermore the evidence is vague and uncertain as to what notes Lampton surrendered to Daughtery, and whether they were of any value or not. And even if the question were presented by the pleadings, and the evidence showed the value of the notes so held and surrendered, we would not be understood as intimating that it would have any effect whatever on the right of appellant to subrogation as contended.

And it is further contended by appellee that, if appellant is entitled to be subrogated to the rights of the bank and Lampton under their mortgages, the amount for which subrogation is given should be reduced to the extent of the purchase money which appellant paid the vendor, Daughtery, in cash, because appellant, having constructive notice by the record of appellee's mortgage, should have seen to the application of said cash payment to said mortgage. We are unable to see how constructive notice to appellant of appellee's mortgage could have anything to do with the right of the former to subrogation. The controlling consideration is the actual facts. The question is: What is natural justice under the actual facts of the situation? Appellee's security was not diminished by the cash payment to Daughtery; it stood, so far as the land security was concerned, exactly as it did before. We do not think there is any merit in this contention of appellee.

We hold that appellant has the right, prior to appellee's mortgage, to enforce the Lampton and bank mortgages to the extent of the money paid by appellant to discharge

them, with interest thereon from date of such payment at the rate provided in the notes secured by said mortgage. Reversed, and judgment here for appellant.

*Reversed.*