# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-CA-01840-SCT

*COMMUNITY TRUST BANK OF MISSISSIPPI, AS SUCCESSOR IN INTEREST TO THE MADISON COUNTY BANK*

*v.*

*FIRST NATIONAL BANK OF CLARKSDALE AND KAREN K. WHITE*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/11/2013 |
| TRIAL JUDGE: | HON. HOLLIS MCGEHEE |
| TRIAL COURT ATTORNEYS: | TIMOTHY JAMES ANZENBERGER |
| | ROBERT COFFMAN RICHARDSON |
| | WILLIAM H. LEECH |
| | GENE D. BERRY |
| | KATHLEEN SHORKEY COOK |
| | MICHAEL D. SIMMONS |
| COURT FROM WHICH APPEALED: | LAFAYETTE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | ROBERT COFFMAN RICHARDSON |
| | WILLIAM H. LEECH |
| | TIMOTHY JAMES ANZENBERGER |
| ATTORNEYS FOR APPELLEES: | GENE D. BERRY |
| | KATHLEEN SHORKEY COOK |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND RENDERED - 09/04/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, P.J., LAMAR AND KITCHENS, JJ.**

**KITCHENS, JUSTICE, FOR THE COURT:**

¶1.     First National Bank of Clarksdale (FNB) secured a loan of more than $800,000 with,

*inter alia*, a deed of trust on real property in Oxford, Mississippi (the "Oxford property"),

with the understanding that the bank would become the primary lien holder on the realty.

FNB acquired title insurance from Mississippi Valley Title Insurance Company ("Mississippi Valley"), to insure itself against the risk of an undiscovered superior lien holder. No formal title search on the property was performed, although Mississippi Valley's agent did discover the existence of another deed of trust on the property held by Community Trust Bank (CTB). However, he never relayed this information to FNB or to Mississippi Valley and issued the policy without regard to this prior recorded lien. Years later, CTB's loan went into default and CTB initiated foreclosure proceedings, which alerted FNB to the existence of CTB's deed of trust on the Oxford property. FNB instituted this suit in the Chancery Court of Lafayette County seeking to be subrogated to the primary lien holder position on the property in the amount that it had paid to satisfy the original primary deed of trust. After a bench trial, the chancellor found that the doctrine of equitable subrogation applied and granted primary status to FNB. CTB appealed.

¶2.     We reverse the judgment of the chancery court and render judgment in favor of Community Trust Bank. Based upon the facts presented, subrogation is not equitable.

### FACTS AND PROCEDURAL HISTORY

¶3.     In 2003, Abner's Inc., owned by Abner White, executed and delivered a deed of trust on an Abner's Chicken Fingers restaurant property in Oxford, Mississippi (the Oxford property), with the First National Bank of Oxford in the amount of $272,922.17. This instrument was filed for record with the Chancery Clerk of Lafayette County. In 2005, another of Abner's business entities executed a deed of trust with CTB, formerly Madison County Bank, on the same realty in the amount of $361,616.00. This deed of trust likewise

2

was recorded by the Chancery Clerk of Lafayette County. When CTB made the loan, it was well aware that First National Bank of Oxford was in the primary lien holder position.

¶4. In 2007, Abner White and his wife, Karen White, divorced. As part of the Whites' property settlement agreement, Abner transferred legal title to the Oxford property to Karen. CTB was unaware of this transaction. Under the terms of the Whites' agreement, Karen was obligated to pay off all debts on the Oxford property in exchange for its being deeded to her. She also received through the divorce one other property on which she was obligated to pay debts.[1] To consolidate her debts, Karen approached Ben Bolton at FNB[2] for a large loan to pay off the debts on the properties she had acquired through the divorce.

¶5. FNB's policy regarding nonresidential real estate loans required either a title commitment and a title insurance policy or an abstract with an attorney's opinion on the state of the title. Bolton testified that, in the case of loans over $250,000, it generally was the policy of FNB to obtain the extra security provided by a title commitment and insurance policy.[3] When FNB was considering whether to offer this loan, Ben Bolton asked attorney

---

[1] Abner was to deed the properties to Karen and then lease them from her, paying to her rental income on the two properties.

[2] First National Bank of Clarksdale does business in Oxford as the Bank of Oxford. Bank of Oxford and First National Bank of Oxford are separate entities.

[3] A title insurance policy insures a lender against the risk of one or more undiscovered, intervening lien holders on the property. The title commitment is drafted to set out the terms and conditions under which a policy will be issued. According to Brad Jones, vice president and claims counsel of Mississippi Mississippi Valley Insurance Company, a title commitment is not a substitute for a certificate of title and is not intended to be a representation of the status of the title to the lender.

3

Matt McKenzie to "provide . . . a title insurance policy and to act as settlement agent."[4] McKenzie performed due diligence on the Oxford property and, as an authorized agent for Mississippi Valley, drafted the title insurance policy. During the course of his research, McKenzie discovered the existence of the CTB lien on the Oxford property. According to McKenzie, Abner White told him that he was going to move the CTB deed of trust "to a separate piece of collateral." This never was done. As to any discussion with CTB about its deed of trust on the Oxford property, McKenzie said that he could not recall anything, although there were notes indicating that he knew how much was needed to pay on the CTB loan in order for CTB to relinquish its primary lien position to FNB. McKenzie's title commitment ultimately did not list the CTB lien on the Oxford property, and the title insurance policy was issued without reference to that lien.

¶6.     Based on the title commitment, and insured to be the primary lien holder on the Oxford property, in 2007, FNB lent Karen White $808,893.16. The loan was secured, in part, by a deed of trust on the Oxford property.[5] The terms of the loan documents made it clear that FNB anticipated having a primary lien holder position on the Oxford property and indicated that FNB had paid off First National Bank of Oxford's deed of trust on the property in the amount of $205,448.71 from the proceeds of the new loan. There is no mention of CTB's deed of trust. For the next three years, both loans were paid regularly, although CTB

_____

[4]Both FNB and McKenzie deny that McKenzie was FNB's attorney. Rather, McKenzie claimed that he represented "[t]he transaction."

[5]FNB also secured the loan with a deed of trust on a second Abner's Chicken Fingers restaurant property in Starkville, Mississippi.

4

was unaware that Abner had transferred ownership of the property to Karen,[6] or that FNB now had a lien on the property. During a period of about three years, Karen paid approximately $560,000 on the FNB loan, paying it down from approximately $800,000 to $240,000.

¶7.     In 2010, the CTB loan went into default. During the course of its collection proceedings, CTB became aware of FNB's lien on the property. McKenzie, the closing attorney whom CTB alleges represented FNB, attempted to work with CTB and convince it to take a junior lien position, but to no avail. When CTB attempted to foreclose, FNB, at the behest of Mississippi Valley, filed the present subrogation action. During the bench trial, FNB argued that it was entitled to equitable subrogation, claiming that it never had "actual knowledge" of the CTB deed of trust,[7] and that equitable subrogation would not prejudice CTB, as it still would be in the secondary position on the property, the position for which it originally had bargained. CTB argued that McKenzie's actual knowledge of the CTB lien transferred to FNB, and that its position was prejudiced because it was now behind a larger loan than the one to which it initially had agreed.

¶8.     The chancellor ultimately sided with FNB and applied equitable subrogation, stating:

> The law as it relates to Community Trust Bank is as follows: If a junior lienholder would not be prejudiced and would essentially be put in the same position he held upon his obtaining judgment, or here the case is deed of trust, equitable subrogation may be applied. To allow the junior lienholder to benefit

---

[6]As Abner's, Inc., still was the obligor on the loan between itself and CTB, Abner's, Inc., continued to pay the CTB loan, despite the fact that the property had been deeded to Karen.

[7]FNB argues that only actual knowledge, not constructive or imputed knowledge, is a bar to equitable subrogation.

from the other's mistake is inconsistent with the principals [sic] of equity and justice.

The chancellor noted that CTB did very little in relation to its taking of the secondary lien on the property: it did not get title work, title insurance, or do an appraisal, and it "attributed little or no value to the subject property." The chancellor determined that FNB did not have actual notice of the CTB lien, that McKenzie was not FNB's attorney in the transaction, and that, even if he was, his knowledge of the CTB lien would be imputed or constructive knowledge for FNB, neither of which is a bar to equitable subrogation. The chancellor awarded equitable subrogation to FNB in the amount of $205,481.71, the amount that it had paid to become the primary lien holder. After the judgment, FNB filed a motion pursuant to Rule 59 of the Mississippi Rules of Civil Procedure[8] to alter or amend the judgment to include five percent interest on the amount originally awarded to it. After a hearing, the chancellor agreed and amended the judgment to include interest. CTB appealed.

## ANALYSIS

¶9.    This Court reviews questions of law *de novo*, and it reviews the factual findings of the chancery court under an abuse of discretion standard. ***Matter of Estate of Mason***, 616 So. 2d 322, 327 (Miss. 1993).

¶10.    Mississippi is a race-notice jurisdiction. "Every conveyance, covenant, agreement, bond, mortgage, and deed of trust shall take effect, as to all creditors and subsequent

---

[8]"On a motion for a new trial in an action without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of judgment." M.R.C.P. 59.

6

purchasers for a valuable consideration without notice, only from the time when delivered to the clerk. . . ." Miss. Code Ann. § 89-5-5 (Rev. 2011). The priority of all instruments filed for record on a piece of real property is "governed by the priority in time of the filing of the several instruments. . . ." *Id.* In other words, when it comes to the order in which the holders of several liens on a property may collect on their loans, it is first recorded, first served.

¶11. Subrogation is an equitable doctrine whereby a court may circumvent the race-notice principles and substitute a later-filed lien into the primary lien holder position on a tract of real estate, such that the substitute creditor "succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies, or securities." ***First Nat'l Bank of Jackson v. Huff***, 441 So. 2d 1317, 1319 (Miss. 1983). This Court has recognized and encouraged the application of equitable subrogation. *See **Prestridge v. Lazar***, 132 Miss. 168, 95 So. 837, 838 (1923) ("The courts should rather incline to extend than restrict the operation of the doctrine."). FNB seeks to be subrogated to the primary position that CTB occupied under our statutory race-notice scheme. In effect, FNB is asking us to ignore our race-notice statutes in the interest of what it perceives to be fairness.

¶12. When determining whether equitable subrogation should apply, "[t]he controlling consideration is the actual facts. The question is: What is natural justice under the actual facts of the situation?" ***Prestridge v. Lazar***, 132 Miss. 168, 95 So. 837, 838 (1923).[9] Ultimately, determining whether equitable subrogation applies is done on a case-by-case basis. *See **Huff***,

---

[9]The parties have separated the main argument regarding subrogation into several subparts. We discuss subrogation as one issue, as it is a matter of balancing the facts and circumstances of the case to reach an equitable outcome, rather than any one dispositive factor's being determinative.

441 So. 2d at 1319. Above all, subrogation must be equitable to the parties involved. "The determination of whether subrogation is applicable is a factual determination of each particular case with consideration of fairness and justice as its guiding principles." *Id.* "The doctrine of subrogation is one of equity and benevolence; its basis is the doing of complete, essential, and perfect justice between the parties, without regard to form, and its object is the prevention of injustice. It does not rest on contract, but upon principles of natural equity." *Prestridge*, 95 So. at 838 (internal quotation omitted). Accordingly, although certain factors may weigh more heavily for or against subrogation, ultimately it is awarded only after carefully weighing all of the facts and circumstances and deciding what the fairest result would be.

¶13. The relevant facts we must consider are as follows. FNB lent Karen White $808,893.16, secured in part by a new deed of trust on the Oxford property, with the expectation that it was now in the primary lien holder position. FNB paid $205,448.71 to satisfy First National Bank of Oxford's primary lien on the Oxford property. The loan to Karen White was made with the assurance by Mississippi Valley that no other liens encumbered the Oxford property, despite Mississippi Valley's agent's being aware of the CTB lien on the property, and despite the fact that a timely and appropriate title search was not conducted by anyone. Over the next three years, Karen paid back more than $550,000 of her loan from FNB. When FNB discovered CTB's lien on the property, it instituted this suit for subrogation in the amount it had paid to satisfy the original primary lien on the property, $205,448.71. Given that Karen White had paid down her FNB loan from more than $800,000 to $240,000, this subrogation amount would largely cover the remaining amount

8

of the loan. The chancellor granted subrogation in the amount of $205,448.71 and later amended the judgment to include interest from the date the payment was made, thus awarding an even greater subrogation amount to FNB. We must analyze these facts and consider the factors that weigh for and against subrogation.

¶14.    Because FNB is subrogated only to the principal amount it paid to obtain primary status, it argues that CTB is behind the same loan it was behind all along. This is consistent with the general consensus of most commentators on the subject. For example,

> Subrogation will be recognized only if it will not materially prejudice the holders of intervening interests. The most obvious illustration is that of a payor who lends the mortgagor more money than is necessary to discharge the preexisting mortgage. The payor is subrogated only to the extent that the funds disbursed are actually applied toward payment of the prior lien. There is no right of subrogation with respect to any excess funds.

*Restatement (Third) of Property: Mortgages* § 7.6 cmt. e. (1997). FNB's position is that, when it made the $800,000 loan to Karen White, it was subrogated to the primary lien holder position only in the principal amount of $205,000, the portion of the $800,000 that it used to pay off the original primary lien. Since this is exactly what the chancellor granted to FNB, FNB contends that CTB was not prejudiced and the subrogation is equitable.

¶15.    However, the facts of this case clearly demonstrate prejudice to CTB as a result of subrogation. After FNB had lent Karen White $800,000 and paid $205,000 to satisfy the original loan on the Oxford property, Karen White proceeded to pay more than $550,000 back to FNB, bringing the outstanding balance on her $800,000 loan down to approximately $240,000. At oral argument, counsel for CTB represented to the Court without contradiction that the original lien would have been paid down to approximately $12,000 in that same time

9

frame if it had continued being paid off at its normal rate. Instead of being behind a $12,000 lien, CTB now finds itself behind a lien of $205,000, plus interest. It is as if the original primary lien had been frozen in time–while collecting interest–from the date that it was paid by FNB. This clearly was prejudicial to CTB, as it allowed FNB, in effect, to bury the subrogation amount of $205,000 underneath the actual loan amount of $800,000.[10] And now FNB is in a position to recover the entire subrogation amount, plus interest, as if Karen White had not paid one cent on the original loan since 2007.[11] This is materially prejudicial to CTB and weighs heavily against subrogation.

¶16.    Further, CTB was prejudiced not only by the amount of the new loan it was placed behind, but also by the fact that the loan it was placed behind involved two completely unknown and unanticipated parties. CTB agreed to a deed of trust in secondary position on the Oxford property because it determined that Abner's, Inc., was very likely to pay off the primary deed of trust secured by First National Bank of Oxford. Abner's, Inc., had a good

---

[10]This is the practical result of FNB's argument. Immediately upon its payment of the original lien, it contends that it was subrogated to $205,000. If FNB immediately had sought subrogation when it paid the primary lien, $205,000 is the only amount to which it would have been entitled. However, it now has been several years since that amount was paid off, and FNB has recouped more than $550,000 from the borrower. FNB nevertheless maintains that it is entitled to $205,000, *plus interest*. So, as time passed, and FNB has recovered more from Karen White, the subrogation amount actually has increased as interest was added. Oddly enough, according to FNB, the more FNB recovered on its loan, the more time passed, and the bigger FNB's subrogation amount became.

[11]At oral argument, counsel for FNB argued that CTB never monitored the status of the original primary lien on the Oxford property. Accordingly, Karen White could not have been paying that lien at all while CTB's lien still was being paid, which would have resulted in CTB's being behind the full subrogation amount plus interest. But the fact is, Karen White did pay down her loan. She paid back more than $550,000. FNB's "what if" proposition has no merit where, as here, Karen White consistently paid back more than twice the amount of the original primary lien.

reputation and was a profitable business, and, as owner of the Oxford property, had significant incentive to pay off the primary lien on the property. CTB did not agree to be behind an $800,000 deed of trust between FNB and Karen White. Essentially, CTB now is owed money by Abner's, Inc., that is secured by a deed of trust on real estate that Abner's, Inc., no longer owns. Abner's, Inc., has markedly less incentive to pay the CTB loan, as it does not retain any interest in the Oxford property. Further, at oral argument, counsel for CTB argued that the calculus of CTB's decision to accept a deed of trust on the Oxford property would have been substantially different if it had known that the owner of the Oxford property was Karen White. This additional prejudice to CTB also weighs against subrogation.

¶17.    We also must consider the fact that FNB and Mississippi Valley had constructive notice of CTB's deed of trust. "Every title-bond or other written contract in relation to land may be acknowledged or proved, and certified and recorded, . . . and the proper certificate thereof and delivery to the clerk of the chancery court of the proper county . . . *shall be notice to all subsequent purchasers* of the existence of such bond or contract." Miss. Code Ann. § 89-5-7 (Rev. 2011) (emphasis added). "The registration of an instrument is constructive notice *to the world* of the contents of the paper there recorded. . . ." ***Simmons v. Hutchinson***, 81 Miss. 351, 33 So. 21, 22 (1902) (emphasis added). When CTB dutifully recorded its deed of trust on the Oxford property in the office of the Lafayette County Chancery Clerk, FNB, Mississippi Valley, and all other interested parties were put on constructive notice of the existence of that deed of trust. FNB wanted to become the primary lien holder on the property, and Mississippi Valley insured FNB that it was. The failure to discover the deed

11

of trust, which provided notice for "the world" to see in the office of the chancery clerk, clearly constituted negligence.

¶18. FNB is correct when it states that constructive notice of a lien and negligence are not bars to equitable subrogation. *See **Prestridge***, 95 So. at 838-39 (holding that constructive notice of a lien did not bar subrogation); *see also **Huff***, 441 So. 2d at 1320 ("We hold that ordinary negligence will not per se bar subrogation. . . ."). The general rule is that actual knowledge and culpable negligence are the only absolute bars to subrogation. As an equitable matter, we agree that neither negligence nor constructive knowledge constitutes a *per se* bar to subrogation. Instead, each merely is a consideration that must be weighed along with other operative factors. FNB has pointed to numerous jurisdictions which have held that subrogation is not barred by constructive knowledge or negligence, but it has not pointed to a single case in which these factors *required* subrogation.[12] In weighing the equities, although constructive knowledge of a lien and negligence in failing to obtain actual knowledge of a lien do not *bar* subrogation, they certainly do not weigh in its favor. CTB's deed of trust was valid and was recorded in the chancery clerk's office, available for any interested party to view. FNB failed to check for the presence and status of liens on the Oxford property. Mississippi Valley, which did have actual notice of the deed of trust through its agent McKenzie, insured FNB against the risk of an undiscovered superceding lien on the property.

---

[12]FNB's argument, if followed to its logical conclusion, would mean that, as long as a lender pays off the primary lien after negligently failing to discover an intervening secondary lien, equitable subrogation should be granted as a matter of course. This cannot be the case. Lenders cannot be incentivized to blind themselves willfully to the existence of other liens on collateral and then claim that their lack of *actual* notice requires subrogation.

If negligence is to be distributed between the banks, there is none to assign to CTB, as it has done nothing wrong. This factor must weigh against subrogation.

¶19.    FNB also argues, and the chancery court in part relied upon, the fact that CTB secured its loan in part with equipment and other chattels as collateral. FNB argues that CTB did not perform due diligence when it also secured its loan with a deed of trust on the Oxford real property. FNB claims that CTB assigned little to no value to the deed of trust, relying instead on the value of the collateral in the personalty. Additionally, as CTB did not periodically check on the status of the primary lien in front of it, it was not relying on becoming the eventual primary lien holder on the Oxford realty. We fail to see how this in any way changes the fact that CTB had a valid, recorded deed of trust on the Oxford property, or how it obviates FNB's or Mississippi Valley's duty to determine whether an intervening interest existed on the Oxford property when FNB made its loan. The chancellor's reliance on this factor was erroneous.

¶20.    Finally, FNB argues that the existence of its title insurance should not be a factor to be considered by this Court in determining whether equitable subrogation is appropriate. However, in the context of equitable subrogation, this Court long ago stated that we must examine "natural justice under the *actual facts* of the situation. . . ." **Prestridge**, 95 So. at 838 (emphasis added). The existence of FNB's title insurance and Mississippi Valley's failure to report CTB's recorded deed of trust on the Oxford property to FNB are relevant facts that equity requires us to consider. Other courts have found that the principles of equity required consideration of the negligence of a title insurance company which bungled the transaction in the first place. After all, "[e]ither they insure or they don't. It is not the province of the

13

court to relieve a title insurance company of its contractual obligation." *Lawyers Title Ins. Corp. v. Capp*, 369 N.E.2d 672, 674 (Ind. Ct. App. 1977) (quotation omitted). In determining that the existence of title insurance was relevant to a consideration of equity, the Missouri Court of Appeals of the Eastern District stated that "[i]t is strange equity indeed, which would protect [the title insurance company] from the results of its negligence at the expense of [the party opposing subrogation], which is totally innocent in the matter." *Landmark Bank v. Ciaravino*, 752 S.W.2d 923, 929 (Mo. Ct. App. 1988). More recently, the Supreme Court of Kentucky found that, in the context of equitable subrogation, the existence and potential negligence of a title insurance company which has insured the party seeking subrogation is relevant to the overall consideration of the equities.

> The equities favor holding the most culpable party responsible for the loss. In this case, the most responsible party is not a party to the case. However, the Court presumes that both lending institutions involved in this case have viable claims against their respective title insurance companies. Those title insurers are engaged in the very profitable business of assuring that their lending institution customers receive a clear title by insuring such. If the title insurer's examiners bungle the title search, no matter how innocent the mistake might be, then the title insurers must ultimately be held liable.

*Wells Fargo Bank, Minnesota, N.A. v. Comm'r, Finance and Admin., Dep't of Revenue*, 345 S.W.3d 800, 808 (Ky. 2011).

¶21.    Once again, we must ask ourselves, "What is natural justice under the actual facts of the situation?" *Prestridge*, 95 So. at 838. As explained above, if subrogation is permitted, CTB is prejudiced. If subrogation is denied, CTB can foreclose on the Oxford property and collect what it is owed to the extent of the property's value. If the value of the property exceeds the outstanding amount of CTB's loan, then FNB may recoup the remainder. FNB

14

also may file a claim with Mississippi Valley, the title insurance company that insured FNB against the risk of an intervening lien on the Oxford property, and whose agent, McKenzie, discovered CTB's intervening lien and then failed to inform anyone about it.

¶22.   Overall, to allow FNB subrogation over CTB would be inequitable in this case. While FNB may not have had actual knowledge of CTB's lien, it was, nevertheless, on constructive notice of the lien by virtue of its having been recorded in the office of the chancery clerk. The fact that CTB is prejudiced by subrogation, in that it now is behind a much larger lien between two unanticipated parties, weighs most heavily against subrogation.  And, while constructive notice of an intervening lien and negligence on behalf of the party seeking subrogation are not *per se* bars to subrogation, they are factors that necessarily must weigh against it. By themselves, these factors are enough for this Court to reverse the chancellor's granting of subrogation to FNB. The safety valve of FNB's title insurance, and the additional circumstances of Mississippi Valley's failure to make its insured aware of CTB's recorded lien, further substantiate our decision.

## CONCLUSION

¶23.   We hold that natural justice under the facts of this case inexorably weighs against subrogation in favor of FNB. CTB was materially prejudiced by being placed secondary to a lien of a value and between two parties that it never agreed to be behind. It now finds itself behind a loan amount that has grown despite consistent and substantial payments by the borrower. FNB has recouped more than twice the amount of the original primary lien on the Oxford property. FNB failed to undertake the most basic of precautions: a title search, and it had, at the least, constructive knowledge of CTB's lien. Instead, FNB relied upon

15

Mississippi Valley to determine the status of the liens on the Oxford property, and FNB paid Mississippi Valley to insure that it would be the primary lien holder on the property. FNB is not the primary lien holder, and it now is in a position to call upon its title insurance company for indemnification. Mississippi Valley easily could have prevented this problem. The chancery court erred in holding that CTB was not prejudiced by FNB's subrogation; it erred in failing to weigh FNB's constructive notice of the CTB lien against FNB; and it erred in failing to consider the possible negligence of Mississippi Valley, which arguably created this dispute. Subrogation is an equitable doctrine, and under the facts of this case, granting subrogation to FNB is not equitable. Community Trust Bank is the primary lien holder on the Oxford property because its deed of trust was recorded first in time. We reverse the decision of the Chancery Court of Lafayette County and render judgment in favor of Community Trust Bank.

¶24.    **REVERSED AND RENDERED**.

**DICKINSON AND RANDOLPH, P.JJ., LAMAR, CHANDLER, PIERCE, KING AND COLEMAN, JJ., CONCUR.  WALLER, C.J., NOT PARTICIPATING.**

16