# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-01556-COA

**CHERYL B. WHITE**                                                    **APPELLANT**

**v.**

**EDGAR TRUMAN WHITEHEAD, RUBY E.**                     **APPELLEES**
**WHITEHEAD, ROBERT L. THOMAS,**
**CITIZENS BANK OF PHILADELPHIA, CAROL**
**B. TAFF, BETHEL BAPTIST CHURCH,**
**THOMAS R. BOYDSTUN, LEAH H. BOYDSTUN,**
**BEN KIRK, JAMES M. WHITEHEAD, ALYSSA**
**CAMERON WHITEHEAD, KEVIN E.**
**WHITEHEAD, TAMI H. WHITEHEAD, GARY**
**M. WHITEHEAD, CAROL WHITEHEAD,**
**BANKFIRST FINANCIAL SERVICES, AND**
**TIMOTHY L. GOWAN**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/23/2018 |
| TRIAL JUDGE: | HON. EDWARD C. FENWICK |
| COURT FROM WHICH APPEALED: | WINSTON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | FRANK G. VOLLOR |
| ATTORNEYS FOR APPELLEES: | EDGAR TRUMAN WHITEHEAD (PRO SE) |
| | RUBY E. WHITEHEAD (PRO SE) |
| | ALAN LEE SMITH |
| | TAYLOR TUCKER |
| | THOMAS R. BOYDSTUN (PRO SE) |
| | LEAH H. BOYDSTUN (PRO SE) |
| | BEN KIRK (PRO SE) |
| | JOHN HOWARD SHOWS |
| | CAROL WHITEHEAD (PRO SE) |
| | JAMES PHILLIP WILSON, JR |
| | RICHARD ALLEN EISENBERGER JR. |
| | JOHN SAMUEL GRANT IV |
| | CHARLES E. WINFIELD |
| | JOSHUA J. WEINER |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 06/30/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**LAWRENCE, J.,   FOR THE COURT:**

¶1.     On June 7, 2016, Cheryl White filed a complaint for a declaratory judgment and other relief against Truman and Ruby Whitehead, Robert Thomas, Citizens Bank of Philadelphia, Carol Taff, Bethel Baptist Church, Perkinsville Inc.,Thomas Boydstun, Leah Boydstun, Ben Kirk, James Whitehead, Alyssa Whitehead, Kevin Whitehead, Tami Whitehead, Gary Whitehead, Carol Whitehead, Bankfirst Financial Services, Timothy Gowan and Does 1-10, asserting that she had a first lien on certain real property by virtue of a deed of trust recorded on January 22, 2002. The defendants represent original owners, trustees and subsequent purchasers of the subject property.  White claimed that her lien ("the White lien") should be given priority over a lien held by Citizens Bank of Philadelphia ("the Bank lien") by virtue of a renewal deed of trust recorded on February 28, 2002, and foreclosed upon on August 5, 2008.  Further, White claimed that her lien should be granted priority under the legal theories of equitable subrogation and unjust enrichment.   On February 10, 2017, one of the defendants, Gary Whitehead, filed a motion for summary judgment, which was subsequently joined by all other defendants.  On September 21, 2018, and after the hearing on the motion for summary judgment, White filed a motion to recuse the trial judge and for a new trial. On September 24, 2018, the Winston County Chancery Court issued a final judgment and an order granting the defendants' motion for summary judgment.  Further, on October 23, 2018, the chancery court issued an additional opinion and final judgment that denied White's

2

motion for recusal and motion for a new trial. Aggrieved by the rulings in both judgments, White appealed. Finding no error in the chancery court's ruling, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. In 1994, Truman and Ruby Whitehead ("the Whiteheads"), joined by their eldest son Gary Whitehead ("Gary"), embarked on a new business venture that included building a new barn and beginning a dairy business. The Whiteheads procured the initial financing for their business venture from Citizens Bank and Trust of Louisville ("Bank").[1] The Whiteheads pledged their land to the Bank to secure a loan in the amount of $247,376 by executing a deed of trust dated July 29, 1994, and recorded August 4, 1994.[2] The 1994 deed of trust was renewed by virtue of six additional deeds of trust recorded on July 19, 1996, May 15, 1998, April 25, 2000, September 4, 2001, January 31, 2002, and February 28, 2002.[3] The subsequent deeds contained renewal and extension language relating them back to the original deed of trust recorded on August 4, 1994.

¶3. In 2001, the Whiteheads began searching elsewhere for additional funding for their business venture. R.W. Boydstun ("Boydstun") agreed to loan the Whiteheads $351,978.55.

---

[1] Citizen's Bank and Trust of Louisville subsequently merged with Citizens Bank of Philadelphia.

[2] The Bank's 1994 deed of trust was recorded in deed book 457 at page 115 of the Winston County land records.

[3] The Bank's subsequent deeds of trust were recorded in the land records of Winston County as follows: book 463, page 569, book 481, page 589, Book 505, page 545, book 526, page 505, book 532, page 22 and book 532, page 61.

The Whiteheads along with Gary and his wife Carol, signed a promissory note for $351,978.55 that was loaned by Boydstun. The promissory note was signed on January 18, 2002. As security for the loan, the Whiteheads pledged their land by deed of trust, dated January 18, 2002 and recorded on January 22, 2002.[4] Boydstun named his daughter, Cheryl White ("White"), the beneficiary of the note and deed of trust. On January 31, 2003, the parties signed a note of extension wherein the White lien's due date was extended to June 30, 2023. The note of extension was recorded on April 20, 2004.[5]

¶4.     The Whiteheads filed for Chapter 12 bankruptcy on June 18, 2007, in the United States Bankruptcy Court for the Northern District of Mississippi. On July 19, 2007, the Bank filed its proof of claim for $518,295.83 and attached the deed of trust recorded on February 28, 2002, the deed of trust recorded on August 4, 1994, and a Uniform Commercial Code (UCC) financing statement on the farm equipment. On August 10, 2007, White filed her proof of claim for $265,517.48 and attached the deed of trust recorded on January 22, 2002, which in addition to the land references a UCC-1 on the cows, dairy equipment, and farm equipment. The promissory note which was dated January 18, 2002, two additional notes and ledgers, and records of payments were also attached to White's proof of claim.

¶5.     On June 23, 2008, the Bank filed a notice of breach of order granting relief from

_____

[4] The Whiteheads' deed of trust was recorded in deed book 548 at page 52 of the Winston County land records.

[5] The Whiteheads' note of extension was recorded in deed book 583 at page 126 of the Winston County land records.

4

automatic stay in the Whiteheads' bankruptcy proceeding and after being granted permission by the bankruptcy court, the Bank conducted a non-judicial foreclosure sale on August 5, 2008. White was present at the foreclosure sale but did not bid on the subject property. A credit bid by the Bank of $566,937.99 was the only bid made at the sale. Importantly, there were no cash sale proceeds in excess of the secured debt owed to the Bank. The foreclosure sale was evidenced by a substituted trustee's deed ("foreclosure deed") recorded on October 7, 2008.[6] On August 22, 2008, the bankruptcy court entered an agreed order pursuant to a prior *ore tenus* motion by the bankruptcy trustee for authorization to auction the subject real property. The order was not agreed to by the Bank nor was it signed by the Bank. However, White signed the agreed order. The order stated in part that White was the beneficiary of the second deed of trust and the Bank was the beneficiary of the first deed of trust. The auction referenced in the agreed order never took place. After the Bank received the trustee deed for the subject property, it parceled out all of its rights, title, and interest to third-party purchasers by virtue of special warranty deeds. All of the third-party purchasers were named additional defendants in White's complaint.

¶6. On September 22, 2008, the Whiteheads filed a complaint for declaratory judgment in the Winston County Chancery Court seeking to cancel White's deed of trust and release her lien against the subject property. On November 4, 2009, the Whiteheads' complaint was dismissed without prejudice pursuant to Mississippi Rules of Civil Procedure Rule 41(d).

_____

[6] The foreclosure deed was recorded in deed book 311 at page 270.

¶7.    On April 20, 2009 White filed a complaint against Gary for breach of contract based on the promissory note dated April 15, 2004, that had been secured by the White deed of trust.[7]  The April 15, 2004 note was a renewal of the original January 18, 2002 note.  The parties ultimately reached a settlement in favor of White.  On August 24, 2011, a judgment was entered in which Gary and his wife Carol would pay White $15,000 plus 8 percent post-judgment interest until the judgment was paid in full.

¶8.    On June 7, 2016, White filed her complaint for declaratory judgment and other relief, against Truman and Ruby Whitehead, Robert Thomas, Citizens Bank of Philadelphia, Carol Taff, Bethel Baptist Church, Perkinsville Inc.,Thomas Boydstun, Leah Boydstun, Ben Kirk, James Whitehead, Alyssa Whitehead, Kevin Whitehead, Tami Whitehead, Gary Whitehead, Carol Whitehead, Bankfirst Financial Services, Timothy Gowan and Does 1-10, which is the subject of this appeal.  White subsequently filed her first amended complaint for a declaratory judgment and other relief on November 10, 2016.  White's complaint asserted that she had a first lien against the subject property and requested a judgment granting her a priority lien on the legal theories of equitable subrogation and unjust enrichment.

¶9.    On November 10, 2016, Gary filed his motion for summary judgment, which was later joined by the remaining defendants, including the Bank.  Gary's motion for summary judgment asserted legal theories under which his motion should be granted, including judicial estoppel, res judicata, the statute of limitations, legal estoppel by acknowledgment

---

[7] This was recorded in cause number 2009-088-CVL.

of lien position, laches, waiver, and unclean hands.

¶10.     On June 22, 2017, the chancery court held oral arguments on Gary's motion for summary judgment.  At the oral argument, the court declined to consider three depositions that White attempted to present.  Approximately one year later, on May 21, 2018 the chancery court requested that the parties submit findings of facts and conclusions of law by June 25, 2018, for the court's consideration.  On September 24, 2018, the chancery court entered an order granting the defendants' motion for summary judgment as well as a final judgment.  The final judgment held as follows: (1) the summary judgment was granted, (2) White's first amended complaint for declaratory judgment and other relief was dismissed, (3) the White deed of trust and all liens arising out of the same were subordinate to the Bank deed of trust, (4) as a result of the 2008 non-judicial foreclosure, the White deed of trust as well as any other subordinate liens were "wiped out," (5) by virtue of the subordinate deeds being wiped out, all persons who received ownership interests in the subject property via conveyance from the Bank took title free and clear, (6) the factual and legal issues adjudicated by granting the summary judgment, were dispositive of all other counter-claims or cross-claims, and (7) upon receipt of payment of applicable recording fees, a copy of the final judgment would be recorded in the land records of Winston County, Mississippi.

¶11.     After the oral argument but prior to the entry of the order granting defendants' motion for summary judgment and final judgment, the judge contacted the Bank's attorney, Alan Smith ("Smith") requesting that he convert his proposed findings of fact and conclusions of

law into an order granting defendants' motion for summary judgment. Via email dated September 19, 2018, Smith circulated the order and final judgment to White's attorney wherein he disclosed his communication with the judge and court staff. On September 21, 2018, after learning of the judge's phone call to Smith, White filed a motion to recuse and for new trial.[8] On October 23, 2018, the chancery court entered its opinion and final judgment on White's motion to recuse and motion for new trial, wherein both motions were denied. Aggrieved by the final judgment and order granting defendants' motion for summary judgment entered on September 24, 2018, and the opinion and final judgment entered on October 23, 2018.

## STANDARD OF REVIEW

¶12.    "The Court reviews a trial court's grant or denial of summary judgment de novo." *Collins v. City of Newton*, 240 So. 3d 1211, 1216 (¶11) (Miss. 2018) (citing *Crosthwait v. Southern Health Corp. Of Houston Inc.*, 94 So. 3d 1070, 1073 (Miss. 2012)).    Summary judgment is proper when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact [.]" M. R. C. P. 56(c). The evidence must be viewed in the light most favorable to the opposing party. *Collins*, 240 So. 3d at 1216 (¶11).

## ANALYSIS

I.    **Motion for Summary Judgment**

---

[8] There was not a hearing on White's motion to recuse and motion for a new trial.

¶13.   The motion for summary judgment asserted legal theories including: judicial estoppel, res judicata, the statute of limitations, legal estoppel by deed, lien position, laches, waiver, and unclean hands.  However, the outcome of this case rests primarily on the issue of lien priority.  The Bank argues on appeal that the chancellor's ruling on the core issue of lien priority entitled the defendants to an order granting summary judgment.   White argues on appeal that the chancery court judge should have considered additional facts, testimony, and evidence in support of her asserted claims under the legal theories of equitable subrogation and unjust enrichment.

### A.     Lien Priority

¶14.   On August 5, 2008, the Bank foreclosed on its deed of trust recorded on February 28, 2002.  The 2002 deed of trust specifically stated, "THIS DEED OF TRUST IS A RENEWAL AND EXTENSION OF THE ORIGINAL DEED OF TRUST DATED JULY 29, 1994[.]" Further, the 2002 deed of trust set out five additional renewal and extension deeds of trusts recorded between 1994 and 2002.  The White deed of trust was recorded on January 22, 2002, after the Bank's original deed of trust but before its last renewal and extension deed. Finally, the White Deed of Trust contained language stating that it was "SUBJECT TO EXISTING FIRST DEED OF TRUST."

¶15.   "In Mississippi, priority positions of deeds of trusts are 'governed by the priority in time of the filing of the several instruments.'" *The Pennington Group LLC v. PriorityOne Bank*, 228 So. 3d 880, 884 (¶10) (Miss. Ct. App. 2017) (quoting Miss. Code Ann. § 89-5-5

9

(Rev. 2011)).  In *Smith v. Childress*, the Mississippi Supreme Court held that a subsequent loan which was made as a renewal or extension of a prior loan will keep the priority status of the original deed of trust and prevail against intervening lien holders.  119 Miss. 20, 80 So. 245, 346 (1919).  The law established in *Smith* as to the priority of subsequent renewal deeds of trust was reaffirmed by this Court in the 2017 *Pennington Group* case.  *Id.*

¶16.    The law is clear that subsequent deeds of trust that serve as renewals or extensions of prior deeds of trust should be given the same priority date as the original deed of trust. Further, any intervening deeds of trust are subject to the lien of the original deed of trust. It is clear by virtue of the plain language of the Bank's 2002 deed of trust that **it was** a renewal deed of trust relating back to the original deed of trust recorded on August 4, 1994.  Further, and important to the resolution of this case, the White deed of trust contained language that **it was** subject to the existing first deed of trust.  The chancery court held that as a matter of law, the Bank's deed of trust had priority over the White deed of trust.  In finding that the Bank's deed of trust had priority over the White's deed of trust, the chancery court further found that the 2008 non-judicial foreclosure sale on the Bank's deed of trust was valid and in turn extinguished the rights of all subordinate lienholders, including White.  It is undisputed that the sale price of the property at the foreclosure sale was less than the amount owed on the first deed of trust to the Bank and the Bank was the prevailing bidder as a result of its credit bid.  Finding no error with the chancery court's ruling, we affirm as to issue of lien priority.  Because we affirm the ruling of the chancery court that the Bank's deed of trust

takes priority status over White's as a matter of law, there is no need to discuss the additional remedies asserted in the summary judgment motion and outlined in the order granting the defendants' motion for summary judgment.

## B. Equitable Subrogation

¶17.    White argues on appeal that the chancery court should have considered additional facts, testimony, and evidence in support of her claims arising out of equitable subrogation despite a potential finding that the Bank had priority over her deed of trust. Specifically, White alleges that her lien should be given priority over the bank to preserve fairness and equity. The Bank argues that White is not entitled to equitable subrogation due to her actual knowledge of the existing deed of trust held by the Bank.

¶18.    The Supreme Court of Mississippi has defined equitable subrogation as:

> [A]n equitable doctrine whereby a court may circumvent the race-notice principles and substitute a later-filed lien into the primary lien holder position on a tract of real estate, such that the substitute creditor 'succeeds the rights of the other in relation to the debt or claim, and its rights, remedies or securities.'

*Community Trust Bank of Miss v. First Nat'l. Bank of Clarksdale*, 150 So. 3d 683, 687 (¶11) (Miss. 2014) (citing *First Nat'l Bank of Jackson v. Huff*, 441 So. 2d 1317, 1319 (Miss. 1983)). The application of equitable subrogation is extremely fact-specific to each case and should be analyzed on a case by case basis. *Id.*

> The doctrine of subrogation is one of equity and benevolence; its basis is the doing of complete, essential, and perfect justice between the parties, without regard to form, and its object is the prevention of injustice. It does not rest on contract, but upon principles of natural equity.

11

*Id.* (citing *Prestridge v. Lazar*, 132 Miss. 168, 95 So. 837, 838 (1923)). However, there are certain notice factors that may serve as an absolute bar to the application of equitable subrogation. While constructive notice of a lien and negligence are not bars to equitable subrogation, "The general rule is that actual knowledge and culpable negligence are the only absolute bars to subrogation." *Prestridge*, 95 So. at 838; *Community Trust Bank of Mississippi*, 150 So. 3d at 690.

¶19.    The White deed of trust includes specific language that states that it is "SUBJECT TO EXISTING FIRST DEED OF TRUST." The chancery court held that this language in White's deed of trust is a clear acknowledgment and admission by White that on the date that she executed her deed of trust, she had actual knowledge that she had a subordinate lien on the subject property. Further, White had an attorney representing her interest throughout the bankruptcy hearing, wherein an agreed order was signed by her attorney recognizing the Bank's priority lien in the subject property. In finding that White had actual knowledge of a priority lien, the chancery court held that White's knowledge was an absolute bar to her claim to invoke the doctrine of equitable subrogation. Finding no error in the chancery court's ruling, we affirm as to the application of equitable subrogation.

### C.    Unjust Enrichment

¶20.    Finally, White asserted unjust enrichment in her complaint. She alleged that the Whiteheads used the money secured by her deed of trust to pay down the amount owed to the Bank; however, there was no evidence presented that would substantiate her assertions.

12

> Under Mississippi law, the doctrine of unjust enrichment or recovery in quasi contract applies to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another, the courts imposing a duty to refund the money or the use value of the property to the person to whom in good conscience it ought to belong.

*Kersey v. Fernald*, 911 So. 2d 994, 997 (¶13) (Miss. Ct. App. 2005) (citing *Dew v. Langford*, 666 So. 2d 739, 745 (Miss. 1995)). The chancery court held that White's claim for unjust enrichment should be denied with prejudice not only for the lack of evidence presented but further because of the existence of a legal contract. The court held that the bankruptcy agreed order wherein the property lien issue was addressed should be considered a legal contract to bar her claim for unjust enrichment. After review, we find no error in the chancery court's ruling. Thus, we affirm as to the issue of unjust enrichment.

## II.    Motion to Recuse

¶21. White also argues on appeal that the chancery court judge violated Mississippi Code of Judicial Conduct, Canon 2A and Canon 3B(7). The basis for her allegation is an *ex parte* communication between the judge and the attorney for the Bank, wherein the judge requested the Bank's attorney to submit his findings of fact and conclusions of law in the form of an order and re-submit to his office. The phone call occurred on September 18, 2018, and White's attorney was made aware of the phone call the following day, September 19, 2018. White asserts that as a result of the alleged violation, the chancery court judge should have recused himself pursuant to Uniform Chancery Court Rule 1.11 and granted her motion for a new trial pursuant to Rule 59 of the Mississippi Rules of Civil Procedure. The Bank argued

13

in its response to White's motion and incorporated into its brief that the *ex parte* communication fell under the "administrative purpose" exception in Mississippi Code of Judicial Conduct, Canon 3(7)(a). The Bank asserts that as there was no violation of the Mississippi Code of Judicial Conduct, there was no error in the chancery court judge's ruling which denied White's request for recusal and for a new trial.

¶22.    Canon 2A of the Mississippi Code of Judicial Conduct states, "A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." Further, Canon 3B(7) states in part:

> A judge shall accord to all who are legally interested in a proceeding, or their lawyers, the right to be heard according to law. A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding . . . .

However there is an exception to the rule regarding ex parte communications as follows in Canon 3B(7)(a)(i-ii):

> Where circumstances require, ex parte communications for scheduling, administrative purposes or emergencies that do not deal with substantive matters or issues on the merits are authorized, provided: (i) the judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the ex parte communication, and (ii) the judge makes provision promptly to notify all other parties of the substance of the ex parte communication  and allows an opportunity to respond.

In *Zimmerman v. Three Rivers Planning Development District*, 747 So. 2d 853, 857 (¶10) (Miss. Ct. App. 1999). this Court held that a telephone conversation "regarding a scheduling

14

matter and mailing him, at his request, a proposed memorandum order and opinion after making his decision to dismiss the complaint . . . ." was considered an exception within under the scheduling and administrative exception.

¶23.    In the case at hand, the *ex parte* phone call occurred approximately three months after the parties submitted their findings of facts and conclusions of law and over a year after the oral argument on the summary judgement motion.  Further, the subject of the conversation was solely the conversion of the form of the documents to prepare an order reflecting the ruling upon which the court had already decided.  That being said, the conversation between counsel for the Bank and the chancery court judge did not deal with substantive matters nor was either party given a tactical advantage as a result of the conversation.  Finally the chain of emails concerning the circulation of the final judgment and order granting defendants' motion for summary judgment showed that White was made aware of the Bank's attorney and the chancery court judge's conversation on the very next day.  White was not deprived of any time to respond to the communication.  The chancery court judge held and we affirm that there was no violation of the Mississippi Code of Judicial Conduct, Canon 2(A) or 3B(7).  In affirming that there was no violation of the Mississippi Code of Judicial Conduct, we find no error in the chancery court judge's final judgment denying White's motion to recuse and motion for new trial. [9]

---

[9] Before filing her notice of appeal, White filed a motion asserting that the chancery court judge should have recused himself.  *See* M.R.A.P. 48B.  A three-justice panel entered an order passing the motion for consideration with the merits of the appeal.  The parties

**CONCLUSION**

¶24.     The Bank's deed of trust recorded on February 28, 2002, clearly takes priority over White's deed of trust dated January 22, 2002, as a matter of law.  The bank's 2002 deed of trust was a renewal deed of trust relating back to its original 1994 deed, therefore taking priority.  Further, White failed to prove that her deed of trust should have been given priority by virtue of the legal theories of equitable subrogation or unjust enrichment.  Finally, given that there was no violation of the Mississippi Code of Judicial Conduct by the chancery court, the court correctly held that White's motion for recusal and motion for a new trial should be denied.  Therefore, we affirm the ruling of the chancery court as to the motion for summary judgment, motion to recuse, and motion for a new trial.

¶25.     **AFFIRMED.**

**CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, McCARTY AND C. WILSON, JJ., CONCUR.  BARNES, C.J., NOT PARTICIPATING.**

---

addressed the recusal issue in their appellate briefs.  For the reasons discussed above, White's Rule 48B motion is denied.

16