Willie E. Huff filed this suit in Hinds County Chancery Court First Judicial District, to reinstate real estate trust deed executed by James E. Barrett in Huff's favor which was mistakenly cancelled of record by the First National Bank of Jackson (Bank). The Bank, the heirs of James E. Barrett, deceased, and Charles W. Taylor, et ux., the purchasers from the Barretts, were named defendants. After paying the amount of the trust deed wrongfully *Page 1318 
cancelled by it, the Bank seeks through its cross-bill to be subrogated to Huff's rights and to have the lien of the trust deed reinstated and foreclosed. From an adverse ruling on its cross-bill, the Bank appeals assigning as error that the trial court erred (1) in denying the bank its right to be subrogated to Huff's position because of its own negligence and (2) in failing to establish a constructive trust and equitable lien in favor of the Bank against the Taylors' deed of trust to the Barrett heirs.
 I.
On November 23, 1973, Willie Huff sold 19.7 acres of land in Hinds County to James Barrett and Eugene Fowler. In return, Barrett and Fowler executed a promissory note and a deed of trust to Willie Huff in the amount of $29,947 as partial consideration for the purchase of the property. Thereafter in a totally different transaction on July 1, 1974, Willie Huff borrowed $12,000 from the First National Bank of Jackson, and as security for this loan, the bank required that Huff assign the Barrett-Fowler note and deed of trust. On November 1, 1974, Fowler conveyed to Barrett his interest in the 19.7 acres of land, and Barrett assumed the Barrett-Fowler note and deed of trust originally due to Willie Huff, but now assigned to the First National Bank of Jackson.
On March 2, 1977, Willie Huff paid in full his $12,000 note with the bank. Upon payment of this note a bank employee mistakenly cancelled the Barrett-Fowler deed of trust given to the bank as security. This was done on March 7, 1977.
Mr. Barrett had made the monthly payment from 1973, and had continued to make monthly payments on the promissory note to Willie Huff until his death on June 8, 1977. Barrett's widow, Mrs. Louis Barrett, continued to make the monthly payments through her husband's estate after his death.
Mrs. Louise Barrett probated her husband's will on July 5, 1977. The first publication of the notice to creditors to probate claims in Barrett's estate was published on July 18, 1977, causing all claims against Barrett's estate to be filed within the 90 day period ending October 18, 1977. During this 90 day period, Willie Huff made no attempt to probate his claim against Barrett's estate since the monthly payments on the promissory note were being kept current by Mrs. Louise Barrett, and Huff's ignorance of the mistaken cancellation of record.
On December 1, 1977, Mrs. Barrett made a payment to Willie Huff on the note, but discontinued them thereafter on her attorney's advice to cease making payments. The advice was based upon the fact that the 90 day period for probating claims had expired and the deed of trust securing the note had been cancelled by the bank. It was after this discontinuance of payments that the bank's error in cancelling the Barrett deed of trust was discovered. On March 14, 1978, Harris Collier, Vice President with the bank, wrote to the Barrett estate attorney and asked him to consult with Mrs. Barrett about having the deed of trust reinstated and the past due note payments brought current. The request of the bank was reported to Mrs. Barrett, but she communicated her refusal by letter dated March 20, 1978.
Mrs. Barrett entered into a contract on March 29, 1978, for the sale of the 19.7 acres of land to the Taylors. A chancery court order authorizing the administratrix to sell this property was entered on April 20, 1978, and the executrix did convey the property to the Taylors on April 28, 1978, for a purchase price of $75,000. In return, the Taylors executed a deed of trust for the benefit of the Barrett estate, securing a promissory note in the amount of $56,250.
Since Mrs. Barrett discontinued her monthly payments on the note, Willie Huff sued the First National Bank on January 19, 1979, in the Circuit Court of Hinds County for negligence in cancelling the Barrett deed of trust in March of 1977. On February 20, 1979, the estate of James Barrett was closed, and on March 1, 1979, the administratrix assigned the balance due on the Taylor note to herself individually. *Page 1319 
On April 8, 1980, a judgment was rendered in favor of Willie Huff against the First National Bank for wrongful cancellation of the Barrett deed of trust. The amount of the jury award was $28,583.53 as damages for the unpaid principal and interest owed on the Barrett deed of trust to Willie Huff. Additionally, $15,000 was awarded for general damages against the bank making a total judgment of $43,583.53 in Huff's favor.
On April 22, 1980, Huff filed the present lawsuit in the Chancery Court of the First Judicial District of Hinds County requesting that the Barrett deed of trust be reinstated and the Taylor deed of trust be subordinated to the Barrett deed of trust and the Barrett deed of trust be foreclosed. The defendant parties to this chancery action included Mrs. Barrett, the Taylors, the bank, and the two trustees in the two deeds of trust. After the filing of this chancery suit on June 9, 1980, the First National Bank paid the judgment awarded to Huff in the circuit court action (and did not appeal). However, the bank did file a cross-bill in the chancery court matter seeking subrogation of all rights and claims Huff had against the remaining defendants since the bank had now paid the obligation under the Barrett note and deed of trust. The bank requested the court to impose a constructive trust or equitable lien in favor of the bank as to the Taylor deed of trust. At the trial neither Huff nor his counsel appeared. The only disputed matter remaining was the bank's cross-bill for subrogation and establishment of a trust.
The chancellor held that the bank was not entitled to the equitable doctrine of subrogation since it had paid the Barrett obligation as a result of its own negligence. Further, the trial court concluded that even so, Huff had lost all his rights since the security of the trust deed was cancelled of record by the bank and the unsecured claim of the promissory note was not probated in the estate. Therefore, the bank's cross-bill was dismissed.
 II.
Is the bank entitled to be subrogated to Huff's position where it paid a debt caused by its own negligence?
Subrogation has been defined as the "substitution of one person in place of another, whether as a creditor or as the possessor of any rightful claim so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies, or securities. Words and Phrases Vol. 7, p. 6722." Trust Company v. Peters, 72 Miss. 1058, 18 So. 497, 30 L.R.A. 829.
The equitable doctrine of subrogation applies whenever any person, other than a mere volunteer, pays a debt or demand which in equity and good conscience should have been paid by another, or where one finds it necessary for his own protection to pay the debt for which another is liable. Prestridge v. Lazar,132 Miss. 168, 95 So. 837 (1923).
However, subrogation cannot be invoked by one who has been required to pay the debt of another when the requirement was caused by his own wrongful conduct and when to require the debtor to pay under the peculiar circumstances of the case, would be unjust to the debtor. Lyon et al. v. Colonial United StatesMortgage Company, 129 Miss. 54, 91 So. 708 (1922). The conduct described in the Lyon case, supra, suggests wrongful conduct as precluding equitable relief.
The determination of whether subrogation is applicable is a factual determination of each particular case with consideration of fairness and justice as its guiding principles. Some other jurisdictions do not bar the application of subrogation for negligence alone. Accord, Castleman Construction Company v.Pennington, 222 Tenn. 82, 432 S.W.2d 669 (1968) (ordinary negligence alone will not be a complete bar to subrogation where in spite of such negligence the equities are still in favor of the subrogee); Federal Land Bank v. Joynes, 179 Va. 394,18 S.E.2d 917 (1942) (negligence should be chiefly of significance when there are subsequently *Page 1320 
intervening rights involved which would be prejudiced if subrogation were allowed); Home Owners' Loan Corp. v. Papara,241 Wis. 112, 3 N.W.2d 730 (1942) (where debtors received benefit in payment of existing mortgage against their interests and none of them has changed his position by reason of said payment, subrogation would be invoked in spite of negligence of payor); G. Osborne, Handbook on the Law of Mortgages, 572 (2d Ed. 1970) (where no one has been misled or injured thereby, negligence of any sort should be entirely immaterial).
In the instant case, Mr. Huff has collected his contract price for the 19.7 acres he sold. In turn, Mrs. Barrett has however received both cash and the Taylor promissory note for the value of the 19.7 acres of land without paying the substantial portion of the original obligation on the property. And, the bank has paid $24,685.01 in principal, plus interest of $3,398.52 which Barrett was obligated to pay Huff and additionally $15,500.00 damages. Certainly, the equities are in favor of the bank as opposed to Mrs. Barrett since she has been unjustly enriched. Under the Lyon case, supra, subrogation may be barred if two conditions occur: (1) wrongful conduct by the subrogee, and (2) injustice to the debtor. Under these facts we see no injustice to the Barretts. As a result, the bank should have been allowed any rights which the doctrine of subrogation could provide. We hold that ordinary negligence will not per se bar subrogation, and that the bank is entitled to subrogation to Huff's position.
 III.
The second issue to be considered is what claim or rights the bank has as a subrogee. In such situations, the subrogee is substituted in place of the creditor (Huff) and is entitled to assert any rights that the latter may have had by way of proceeding against the debtor (Barrett). Stribling BrothersCorp. v. Euclid Memphis Sales, 235 So.2d 239 (Miss. 1970); Restatement of Restitution § 162 (1937). An analysis of Huff's rights is necessary.
The appellees claim that Huff has no rights against Mrs. Barrett because he failed to probate his claim against the Barrett estate within the time period prescribed by section91-7-151 of the Mississippi Code Annotated (Supp. 1982). That section provides in pertinent part that:
 All claims against the estate of deceased persons, whether due or not, shall be registered, probated and allowed in the court in which the letters testamentary or of administration were granted within ninety (90) days after the first publication of notice to creditors to present their claim. Otherwise, the same shall be barred and a suit shall not be maintained thereon in any court, even though the existence of the claim may have been known to the executor or administrator.
However, section 91-7-151 must be read in conjunction with section 91-7-167 of the Mississippi Code Annotated (1972), which provides the following qualification of section 91-7-151:
 A creditor of a decedent who has a lien of any kind on property of the decedent shall not be barred of his right to enforce the lien against the property by a failure to present his claim and have it probated and registered, but shall be barred of all claim to be satisfied out of the assets not affected by such lien. . . .
If Huff, (and the bank as its subrogee) had a lien, legal or equitable, against this property, his cause of action would still be viable.
Huff's right of action to correct this inequity arose at the time of the cancellation of trust deed, and at that time he would have been entitled to reinstate the deed of trust to prevent unjust enrichment of Barrett. A constructive trust and equitable lien arose by operation of law at that point in time. The real estate was then burdened with a constructive trust and equitable lien.
 [T]he trust was not created by the decree of the court below declaring its existence, as contended by appellant, but the lien of the trust arose by operation of law from the misapplication of the funds by the testator in acquiring the particular property, and existed from the time of such *Page 1321 
misappropriation, and the heirs and devisees acquired and held the property subject to the trust. The statute authorizes the enforcement of any and every kind of lien against the particular property affected thereby, without the necessity of probating the claim, and, in the absence of intervening rights of a bona fide purchaser for value without notice, the lien of the trust impressed upon the property here involved may be enforced against the property, without first probating the claim against the decedent's estate. [Sandy, et al v. Crump, 139 Miss. 163, 103 So. 804 (1925)].
At Barrett's death, his heirs inherited the land subject to the same trust and lien. Huff's election to probate and register the promissory note in the estate was not pursued and was lost at the end of the ninety (90) day limitation period. However, the election to pursue the trust or lien establishment against the specific real estate was still available under section 91-7-151
as that statute applies to "liens of any kind" and provides that those liens are not barred within the ninety (90) day period. Huff sought in this chancery suit to "reinstate" the trust deed of record, and he clearly would have been entitled to relief, as against the estate, under the authority of Sandy, supra, and also Box v. Early, 181 Miss. 19, 178 So. 793 (1938), which states:
 Neither does the presumption that a lien secured by a deed of trust is extinguished by the cancellation thereof on the record, nor the presumption of payment that arises from the possession by the makers of a note and deed of trust given to evidence a purchase money or other lien, prevent a court of equity from reviving and enforcing the lien, where there are no intervening equities, when necessary to do so in order that right and justice may prevail. (181 Miss. at 32, 178 So. at 796)
Haraway v. Planters Agricultural Credit Corporation,178 Miss. 489, 173 So. 448 (1937) addresses our law on equitable liens insofar as the burden of proof in these actions. To reform a deed of trust containing a mistake and establish an equitable lien the evidence must be clear and convincing. Huff's cancelled trust deed would have clearly established the proof of the terms of the parties' agreement to obtain reinstatement of the trust deed or to obtain an express equitable lien.
Addressing more specifically now the request for a constructive trust we note its definition:
 A constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it. Scott on Trusts, Vol. V § 462 p. 3413.
Huff's suit was filed after legal title was transferred to the Taylors from the Barretts. The Barretts do not hold legal title to the land upon which a constructive trust is sought, and the Taylors are innocent third parties. Additionally, the Taylors are under no duty to convey the land, nor are they unjustly enriched in this transaction.
Therefore, the transfer of title from the Barretts to the Taylors preclude the imposition of a constructive trust.
But the complaint here seeks also the imposition of an equitable lien. An equitable lien would have been available to Huff under the Haraway decision separate and apart from his request for a constructive trust. A leading treatise, Scott on Trusts, Vol. V, section 483, states:
 In some situations the plaintiff is entitled to an equitable lien, but not to enforce a constructive trust. Thus where a person makes improvements upon property of another as a result of fraud or mistake of such a character that he is entitled to restitution, he can enforce an equitable lien upon the property to secure his right to restitution, but he cannot enforce a constructive trust of the property. (Id. at 3425).
Title having been transferred to the Taylors prevents the enforcement of a lien against the real estate itself. We now turn to this problem. *Page 1322 
 IV.
A growing development of law within the last century is the law of restitution, based on unjust enrichment, although its roots extend back to early English law.[1]
As a part of this expanding field, the application of the technique of "tracing" is defined:
 Through tracing, a person who in the first instance would be entitled to the restitution of money or other property is often permitted to assert his claim against a substituted asset — an asset which is traceable to or the product of such money or other property. (Id. at 175).
The end result of tracing could consist of a judgment for restitution of the traced asset, or for imposition of a lien, or a decree for subrogation. But occasionally a money judgment will be awarded where the substituted asset cannot be reached because of sale or consummation.
Such is the instant case. The real estate subject to an equitable lien has been sold to the Taylors and a substituted asset exists in the deed of trust form of the note for balance of the purchase price.
We reverse the chancery court and remand this case for the trial court's determination of what form of relief would be most equitable. The trial court may consider, but is not limited to, granting of a judgment against the Barrett heirs in favor of the Bank, or the imposition of a lien upon the Taylor note and deed of trust in favor of the Bank in the amount of $28,583.53, plus interest as provided in the Huff deed of trust.
REVERSED AND REMANDED TO THE CHANCERY COURT OF HINDS COUNTY, FIRST JUDICIAL DISTRICT, FOR DETERMINATION OF APPROPRIATE REMEDY.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and ROY NOBLE LEE, BOWLING, HAWKINS, DAN M. LEE and ROBERTSON, JJ., concur.
[1] Restitution based upon unjust enrichment cuts across many brances of the law, including contract, tort, and fiduciary relationship, but it also occupies much territory that is its sole preserve. Thus, when one person mistakenly confers a benefit on another, as by paying a debt the other owed to a third person, the sole basis of liability is unjust enrichment and the only remedy available to the mistaken party is restitution at law or in equity. Law of Restitution, Palmer, Vol. I, section 1.1, p. 2.