# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

---

m 99-60563
Summary Calendar

---

ST. PAUL FIRE & MARINE INSURANCE COMPANY,

Plaintiff-Appellee,

VERSUS

STATE VOLUNTEER MUTUAL INSURANCE COMPANY,

Defendant-Appellant.

---

Appeal from the United States District Court
for the Northern District of Mississippi
(2:97-CV-47)

---

April 5, 2000

Before SMITH, BARKSDALE, and PARKER, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

State Volunteer Mutual Insurance Company ("State Volunteer") appeals a summary judgment directing it to share liability with St. Paul Fire & Marine Insurance Company ("St. Paul") for a claim made against an insured who had been, at the relevant time, putatively covered by both companies. State Volunteer claims that the district court lacked jurisdiction and erred in its application of Mississippi's parol evidence rule and doctrine of equitable subrogation. Finding no reversible error, we affirm.

## I.

Lance Whaley is an obstetrician and gynecologist who contracted with St. Paul for the purchase of medical malpractice insurance. He contracted with State Volunteer for liability insurance, effective January 1, retroactive to 1986.

Whaley delivered an infant named Morgan

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Fletcher. After complications arose as a part of the delivery process, an attorney representing Morgan and the Fletcher family requested hospital records relevant to Whaley's delivery of Morgan, and soon thereafter requested that Whaley put his insurance carrier on notice of a claim by the Fletchers. Fletcher informed St. Paul of the request for information and informed both insurers of the demand letter.

State Volunteer suggested to Whaley that he take up the matter with St. Paul. St. Paul, not aware of the State Volunteer contract or the contact between Whaley and State Volunteer, undertook a defense of Whaley and ultimately settled the claims.

After the settlement checks had been issued, but before consummation of the settlement, St. Paul discovered the existence of Whaley's policy of insurance with State Volunteer. St. Paul promptly contacted State Volunteer and requested contribution from State Volunteer of one-half of the settlement amount and the cost of defense.

State Volunteer declined. It argued, and Whaley agreed in affidavit testimony to the district court, that it had been informed of the pending Fletcher litigation when it negotiated coverage with Whaley, but had specifically and explicitly agreed with Whaley to exclude the Fletcher incident from its coverage. Neither Whaley nor State Volunteer, however, could provide the court with a contract or an addendum thereto that memorialized this agreement.[1]

The district court held that St. Paul had been subrogated to the rights of Whaley by the doctrine of equitable subrogation, that this put St. Paul in the position of a party to the liability insurance contract between Whaley and State Volunteer, and that under Mississippi contract law, State Volunteer should be held liable for half of the paid Fletcher claim.

## II.

St. Paul's contract with Whaley included a subrogation clause stating that

[a]ny person protected under this policy may be able to recover all or part of a loss from someone other than us. Because of this, each protected person must do all that's possible after a loss to preserve any right of recovery available. *If we make a payment under this policy that right of recovery will belong to us.* If we recover more than we're paid, the excess will belong to the person who had the loss. But we'll deduct our recovery expenses first.

Under less complex circumstances, this clause, by itself, would have provided St. Paul contractual subrogation to the position of Whaley as against State Volunteer. State Volunteer's contract with Whaley, though, contains an anti-assignment clause, declaring that "[a]ssignment of interest under this policy shall not bind the Company until its consent is endorsed hereon." The district court considered the possibility, without explicitly deciding the issue, that State Volunteer's anti-assignment clause invalidated St. Paul's subrogation clause.

We assume *arguendo* that the anti-assignment clause does defeat contractual subrogation. We then, like the district court, look to the possibility of equitable subrogation.

The equitable doctrine of subrogation applies whenever any person, other than a mere volunteer, pays a debt or demand which in equity and good conscience should have been paid by another, or where one finds it necessary for his own protection to pay the debt for which another is liable.

---

[1] State Volunteer notes in its brief that its "policy is not part of the Record on Appeal, but counsel will be taking steps to provide a[] policy to assist the Court in its determination." It did not. We can only assume, therefore, that the "specimen" policy included in the appellate record replicates the written contract which bound Whaley and State Volunteer.

*First Nat'l Bank v. Huff*, 441 So. 2d 1317, 1319 (Miss. 1983). The district court, in its discretion, found equitable subrogation to apply in this instance.

We agree. In *First National*, a bank had erroneously canceled a deed of trust between two of its customers. Eventually, following the debtor's death, the debtor's estate stopped paying on the deed in response to the fact that the creditor had not filed with the estate. The bank was obliged to pay the creditor, but then wished to collect that payment from the debtor. The courts of Mississippi allowed collection under the equitable subrogation doctrine. *See id.* at 1317-20.

The facts here are similar. St. Paul took responsibility for Whaley's liability under the insurance contract, finding out only at the end of the settlement process that State Volunteer might also be responsible for the liability. Whaley had granted St. Paul the right to stand in Whaley's shoes in any circumstances in which another party might be wholly or partly liable for payments made by St. Paul on Whaley's behalf, and Whaley had promised to "do all that's possible after a loss to preserve any right of recovery."

Hence, Whaley was in good faith bound to St. Paul to attempt to collect from State Volunteer, and St. Paul should in equity have recovered half of its expenditure in the Fletcher case. While the anti-assignment term *may* have defeated that right at law, the district court did not abuse its discretion by determining that equity requires that St. Paul be placed in Whaley's shoes in order to collect from State Volunteer.

### III.

State Volunteer states two primary arguments against this understanding. First, it contends that the district court erred in failing to consider its proffered parol evidence that the insurance contract between Whaley and State Volunteer had been intended to exclude any liability for the Fletcher event. Second, it avers that St. Paul should be estopped from collecting from State Volunteer because it did not allow State Volunteer to negotiate with the Fletchers toward the eventual settlement.

With regard to the issue of parol evidence, State Volunteer does successfully direct this court to an error by the district court. In Mississippi, the parol evidence rule limits the introduction of extrinsic evidence to elucidate the real meaning of a contract *only* when the parties to the dispute are also the parties to the contract.

The parol evidence rule provides that when the language of a contract is clear and unambiguous, parol testimony is inadmissible to contradict the written language. However, more importantly, this Court has also held that this Court has adopted the general rule that the parol evidence rule applies only to controversies between parties to the agreement. In the case *sub judice*, the "agreement" in question is the insurance policy, and the insurance company is not a party in this controversy. Therefore, this Court holds that the evidence received by the Court was properly admitted and properly considered.

*Sullivan v. Estate of J.C. Eason (In re Eason)*, 558 So. 2d 830, 832 (Miss. 1990) (*citing Smith v. Falke*, 474 So. 2d 1044, 1046 (Miss. 1985)) (internal quotation marks omitted).

This passage illustrates the error of the district court's assertion that parol evidence is not admissible when a non-party to the contract wishes an interpretation of the contract unless the contract is ambiguous. Rather, in Mississippi, the parol evidence rule functions only when the parties to a contract seek interpretation thereof, and then only when that contract is unambiguous on its face.

The error is of no help to State Volunteer, however. As we have said, St. Paul, by the efforts of the doctrine of equitable subrogation, stands in Whaley's shoes:

Subrogation has been defined as the substitution of one person in place of another, whether as a creditor or as a possessor of any rightful claim so that he

who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies, or securities.

*First National*, 441 So. 2d at 1319 (internal quotation marks omitted).

For purposes of this litigation, therefore, St. Paul is no stranger to the contract, but is the representative of one of the contracting parties. As a result, State Volunteer may not enter into the record parol evidence of the special intent of the parties (here, the intent not to cover the Fletcher event), because the contract unambiguously failed even to allude to such an exception. State Volunteer is therefore bound by the unambiguous terms of the contract.

This "stepping into the shoes of" Whaley also defeats State Volunteer's argument that the district court lacked jurisdiction. State Volunteer argued that because there was no privity of contract between St. Paul and State Volunteer, St. Paul had no standing to bring an action against it. Because subrogation inserts St. Paul into the position of Whaley, however, proper contract jurisdiction exists.

State Volunteer also argues that it should be protected by the doctrine of waiver, estoppel or laches from application of equitable subrogation. The district court dealt with this argument expeditiously but sufficiently. We simply point out that (1) State Volunteer enjoyed early notification that the Fletcher affair was reaching the crisis stage, and responded by referring Whaley to St. Paul's without guaranteeing its own lack of liability or communicating that purported lack of liability to St. Paul at an early stage of the affair; (2) State Volunteer is charged with knowing that it had not manifested in any writing the understanding with Whaley that the Fletcher affair would not be covered by the Whaley/State Volunteer contract; (3) State Volunteer knew from Whaley's call as crisis approached that at least Whaley did not fully comprehend that State Volunteer had accepted no responsibility for the Fletcher affair; and (4) St. Paul did not know of the Whaley/State Volunteer contract until the eleventh hour of negotiationSSafter it had already written a check to Fletcher. Under these circumstances, we cannot see that the district court abused its discretion in denying State Volunteer the solace of these equitable defenses.

AFFIRMED.