# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CA-00761-COA

IN THE MATTER OF THE ESTATE OF FRANCES M. JORDAN: UNIFUND CCR PARTNERS                    **APPELLANT**

v.

THE ESTATE OF FRANCES JORDAN, EXECUTRIX PAMELA M. LONDON AND EXECUTRIX ELENA JORDAN TATE                    **APPELLEES**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/22/2021 |
| TRIAL JUDGE: | HON. SHEILA HAVARD SMALLWOOD |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | CHARLES PATTON HENLEY JR. |
| ATTORNEY FOR APPELLEES: | MICHAEL ADELMAN |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | REVERSED, RENDERED, AND REMANDED - 05/17/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE BARNES, C.J., McCARTY AND SMITH, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1. A company's claims against an estate were denied as untimely. Although it had judgment liens against the decedent, the trial court ruled the company's claims were not presented within ninety days of the publication of notice, so the claims could not be admitted to probate. Finding that the judgment liens survive the time-bar of probate, and were reasonably ascertainable to the executrices of the estate, we reverse, render, and remand.

## BACKGROUND

¶2. In January 2009, for reasons not contained in the record, a company called Unifund

CCR Partners was awarded a default judgment against one Frances Jordan in the County Court of Forrest County. The underlying debt was for around $20,000, with $12,000 in interest, and then nearly $8,000 in attorney's fees for obtaining the default judgment. The County Court entered a total amount of $40,406.63 in favor of Unifund plus 8% interest "from January 13, 2009, until paid," plus court costs.

¶3. Later in the same year, Unifund sought and received a second default judgment against Ms. Jordan. This second judgment totaled $19,238.85.

¶4. In 2015, Unifund renewed the 2009 default judgment. In its Notice of Renewal it calculated the amount owed by Ms. Jordan pursuant to the judgment to be $51,706.80, noting that the 8% would continue to accrue. In 2016 it renewed this second judgment in the amount of $26,178.66.

¶5. Ms. Jordan passed away in 2020. A few weeks later, her daughters Pamela and Elena petitioned in chancery court to open an estate for their mother and to be appointed its executrices. Attached to the petition was a copy of Ms. Jordan's will, which declared in its first article that she "direct[ed] that all of my just debts be paid . . . ."

¶6. Pursuant to the petition, the trial court admitted the will to probate, and in accord with the will appointed the daughters as co-executrices of the estate. Later, Pamela and Elena filed an inventory of Ms. Jordan's assets, which was composed solely of her home in Hattiesburg, with an estimated value of $120,000 to $150,000. The daughters executed and filed an affidavit, which recited:

2

We further certify that we have made a reasonably diligent effort to identify all persons, firms or corporations which to my knowledge have or may have claim or claims against the assets of the Estate of Frances M. Jordan, and have mailed notice to all persons, firms, or corporations identified as their last known address, informing them that failure to have their claims probated by the Clerk of the Court granting Letters within the ninety (90) day period from the first publication of Notice to creditors will be forever barred.

¶7. Afterward, the two daughters published a notice to creditors in the local newspaper, which ran three times. The published notice alerted all unknown creditors and "all persons who may assert any claim whatsoever of any kind of character" against the estate that the matter was pending in chancery court. If these unknown creditors did not respond in a timely fashion, the notice asserted any claims "will be barred."

¶8. No claims were brought after the publication of notice. However, the daughters did not mail notice to Unifund, despite the presence of the two judgments against Ms. Jordan in Forrest County. The estate was closed on August 6, 2020.

¶9. Several weeks later, on October 5, Unifund filed two claims against the estate based on its two default judgments. For the first claim it sought $52,372.94 and for the second, $30,176.71.

¶10. The daughters immediately contested the claims, characterizing them as "time-barred" since they were filed both after the estate closed as well as after the ninety-days from date of publication of notice. They filed a motion to dismiss on these grounds as well as laches.

¶11. In response, Unifund argued the daughters should have mailed the company notice since it could have been discovered as a creditor if they had used reasonably diligent efforts.

3

The company argued that notice by publication was not a substitute for the actual notice it was due as a judgment creditor. The company further argued in the alternative that since it had an enrolled judgment it could seek a lien on Ms. Jordan's former home regardless of the probate proceedings.

¶12. The trial court found in favor of the daughters. "Reasonable and diligent effort does not require a ten-year review of the judgment roll," the chancery court concluded, further finding "[t]here is no proof that the executrices had any knowledge of the existence of the default judgments."

¶13. For this reason, the trial court determined "Unifund [was] not a reasonably ascertainable creditor entitled to notice by mail." Since Unifund did not respond to the notice by publication either, its claims were found time-barred.

¶14. Unifund appealed this ruling.

**STANDARD OF REVIEW**

¶15. "We will not disturb the factual findings of a chancellor unless such findings are manifestly wrong or clearly erroneous." *In re Est. of Ladner*, 911 So. 2d 673, 674 (¶8) (Miss. Ct. App. 2005). "Whenever there is substantial evidence in the record to support the chancellor's findings of fact, those findings must be affirmed." *Id*. at 675 (¶8). "In matters that are questions of law, this Court employs a de novo standard of review and will only reverse for an erroneous interpretation or application of the law." *Id*.

**DISCUSSION**

4

¶16.    Unifund attacks the trial court's rulings in five core ways. However, there is well-settled precedent on what types of service are required in cases of this type, so we confine ourselves to the effect of the company's judgment liens against Ms. Jordan's estate and whether the daughters were reasonably diligent in their duties as co-executrices of their mother's estate.

**Unifund's claims were not barred.**

¶17.    We begin with the effect of Unifund's two renewed judgments. In reducing its claims against Ms. Jordan to judgment, and in turn having the judgments enrolled in the county where she lived, as well as timely renewing them, Unifund established judgment liens.

*A.      The Effect of a Judgment Lien*

¶18.    As one court has phrased it, "a judgment lien is a type of non-consensual or involuntary lien created by statute." *In re Shavers*, 418 B.R. 589, 604 (Bankr. S.D. Miss. 2009). "In Mississippi, a judgment lien constitutes a general lien on all of the real property . . . that a judgment debtor owns or later acquires within the county where the judgment is enrolled." *Id*. The applicable statute states, in relevant part:

> A judgment so enrolled shall be a lien upon and bind *all the property* of the defendant *within the county where so enrolled*, from the rendition thereof, and shall have priority according to the order of such enrollment, in favor of the judgment creditor, his representatives or assigns, against the judgment debtor and all persons claiming the property under him after the rendition of the judgment. A judgment shall not be a lien on any property of the defendant thereto unless the same be enrolled.

5

Miss. Code Ann. § 11-7-191 (Rev. 2019) (emphases added).[1]

¶19.    A judgment lien is temporary, as the "judgment is valid for only seven years from rendition (not from enrollment)."  Jeffrey R. Barber and Stacey Moore Buchanan, *Debtor-Creditor Relations*, 4 *Encyclopedia of Mississippi Law* § 27:63, Liens (Jeffrey Jackson, Mary Miller & Donald Campbell eds., 3d ed. 2021); *see* Miss. Code Ann. § 15-1-43 (Rev. 2019) ("All actions founded on any judgment or decree rendered by any court of record in this state, shall be brought within seven (7) years next after the rendition of such judgment or decree . . . .").  However, a judgment may be renewed, so long as "the existing judgment or decree has not expired," and the seven-year time clock is reset since "the lien of the renewal of such judgment continues from the date of the enrollment of the existing judgment."  Miss. Code Ann. § 15-1-43.

¶20.    Unifund originally obtained the two default judgments against Ms. Jordan in 2009.  By operation of law, the judgments would have expired in 2016.  However, Unifund timely renewed both judgments.  Therefore under express statutory authority the two enrolled judgments operate as a lien upon "all the property of the defendant in the county where so enrolled," with priority status.  Miss. Code Ann. § 11-7-191.

        B.      *The Probate Process and "Reasonable Diligence"*

---

[1] Per statute, because the judgment arose in State court, it was automatically enrolled. *See* Miss. Code Ann. § 11-7-189(1) (rev. 2019) ("The clerk shall, within twenty (20) days after the adjournment of each term of court, enroll all final judgments rendered at that term in the order in which they were entered on the minutes by entering on The Judgment Roll").

¶21. After a person dies and their estate is opened, State law sets a series of guidelines as to when and how a creditor can seek funds from their estate. The Mississippi Code governs how to identify known and unknown claims made against an estate. First, as to known claims, "[t]he executor or administrator *shall* make *reasonably diligent efforts* to identify persons having claims against the estate." Miss. Code Ann. § 91-7-145(1) (Rev. 2018) (emphases added). "Such executor or administrator *shall* mail a notice to persons so identified, at their last known address, informing them that a failure to have their claim probated and registered by the clerk of the court granting letters within ninety (90) days after the first publication of the notice to creditors will bar such claim as provided in Section 91-7-151." *Id*. (emphasis added). The same statute also sets up the process by which unknown creditors are notified, which is by publication "in some newspaper in the county[.]" Miss. Code Ann. § 91-7-145(2).

¶22. A sister statute addresses the time-bar. "All claims against the estate of deceased persons, whether due or not, shall be registered, probated and allowed in the court in which the letters testamentary or of administration were granted within ninety (90) days after the first publication of notice to creditors to present their claim." Miss. Code Ann. § 91-7-151 (Rev. 2018). As the statute makes clear, if you fail to show up within 90 days, your claims "shall be barred and a suit shall not be maintained thereon in any court . . . ." *Id*.

¶23. The two types of notice are not interchangeable. The Supreme Court has explained that "[f]rom a reading of this statute it is clear that an administratrix has four

7

responsibilities[.]" *In re Est. Petrick*, 635 So. 2d 1389, 1392 (Miss. 1994).

> (1) she must make reasonably diligent efforts to ascertain creditors having claims against the estate and mail them notice of the 90 day period within which to file a claim;
>
> (2) she must file an affidavit stating that she has complied with the first subsection;
>
> (3) she must publish in some newspaper in the county a notice to creditors explaining that they have 90 days within which to file claims against the estate; and
>
> (4) she must file proof of publication with the clerk of court.

*Id.* (line breaks added).

¶24. Furthermore, the Legislature has expressly set what must be included in compiling an inventory. An inventory must list "the type and amount of *any encumbrance* that may exist with reference to any item." *See* Miss. Code Ann. § 91-7-93 (Rev. 2018) (emphasis added).

¶25. The *Petrick* decision strongly informs any case of this type, as it turned on what constituted "reasonably diligent efforts to ascertain creditors having claims against the estate"—the same issue faced in this appeal. In that case a man died without a will while "seized of personal property with a value believed to be approximately $32,000." *In re Est. Petrick*, 635 So. 2d at 1390. The administratrix of his estate noticed several creditors "who received notice by mail," notably omitting a clinic and doctor who treated the decedent. *Id.* She then published notice in the local newspaper. *Id.*

¶26. The clinic and doctor arrived in probate claiming they were owed for past due services, and provided testimony they were neither served by mail, nor did they see the notice in the newspaper. *Id.* at 1391. These claims were submitted to probate long after the ninety-

8

days had run. *Id*. at 1390.

¶27.     Petrick's estate argued the claims were time-barred. *Id*. However, the administratrix stated she had in actuality delegated the efforts to find known creditors to her lawyers and others, but believed "she had done all that she could to ascertain creditors of Petrick's estate." *Id*. at 1392. Despite the fact that the claims were submitted long after the time allowed by statute, the trial court concluded the clinic "was a reasonably ascertainable creditor, and that [the administratrix] did not exercise reasonably diligent efforts to discover" these known claims. *Id*. at 1395.

¶28.     In affirming, the Supreme Court pointed out that the ninety-day time-bar from newspaper publication only attaches when the estate has been "reasonably diligent" in looking for creditors. *Id*. at 1394. "[T]he administratrix may only validly publish notice in some newspaper, which triggers the ninety-day limit to file a claim . . . *after* filing an affidavit with the clerk of court stating that she has made reasonably diligent efforts to identify persons having claims against the estate and has given notice by mail[.]" *Id*. (strong emphasis by the Court).

¶29.     The Court determined that if an executrix "through reasonably diligent efforts could have identified [a creditor] as a 'person' having a claim against the estate, she had the duty to mail notice prior to filing her affidavit, publishing notice in the paper, and filing proof of publication." *Id*. "In other words, if the creditor could have been ascertained through reasonably diligent efforts, mere publication in the newspaper in the county, absent notice

9

by mail, does not comply with the mandates of the statute." *Id*.

¶30.   Critically, the Court held that "[t]he [probate] statute does not specifically allow for notice by publication as a ***substitute*** for actual notice by mail; rather, notice by publication is a requirement ***in addition*** to providing creditors notice by mail." *Id*. at 1393 (strong emphasis by the Court). "It stands to reason that the notice by publication requirement is to further ensure that those creditors who were served by mail are reminded of the time limit to file claims, as well as to give constructive notice to creditors who could not be ascertained through reasonably diligent efforts." *Id*.

¶31.   Applying that rule to the situation in *Petrick*, the Supreme Court held that while the estate sent direct notice by mail to certain creditors, it "failed to give notice to the treating physician" or the clinic, and the administratrix "testified that in actuality, she handed over her statutorily mandated responsibilities to her lawyers" and others. *Id*. at 1395. "That is, by her own admission, she did not personally exercise any effort to discover persons having claims against the estate." *Id*. Given this, the Court determined that the chancellor was correct in allowing the doctor and clinic to pursue their claims against the estate. *Id*.

¶32.   In a more recent case before this Court, we examined a situation where "the administrator filed an affidavit of notice to creditors stating that there were no known creditors of the estate even though the administrator knew that [a friend of the family] had paid the funeral expenses" and handled other financial matters for his father. "Consequently, the administrator sent no notices to creditors," and then proceeded to publish in the local

10

newspaper. *In re Est. of Ladner*, 911 So. 2d 673, 674 (¶4) (Miss. Ct. App. 2005). When the creditor showed up a few months after publication and filed a proof of claim, "[t]he chancellor ruled that [her] claim was time barred, since, based on the date of the first publication of the notice to creditors, the ninety-day period in which to properly probate a claim against [the] estate expired" days before. *Id*.

¶33. Relying heavily on *Petrick*, we reversed and remanded. *Id*. at 676 (¶14). We held that the trial court should have first made "a factual determination . . . as to whether [the family friend] was a reasonably ascertainable creditor" before applying the time-bar. *Id*. "If on remand the chancellor finds that [she] was a reasonably ascertainable creditor, then he shall adjudge that [her] claim was timely filed since she was not sent any notice by the administrator." Because, if the creditor was "a reasonably ascertainable creditor of the estate, a strict and literal interpretation" of the Code "mandates that she be given notice by mail by the administrator before the ninety days . . . begins to run." *Id*.

C.     *Judgment Liens Are Not Subject to Probate*

¶34. Inevitably, the rights of judgment creditors and the probate process collide. Therefore the Legislature established that "a creditor of a decedent who has a lien of any kind on property of the decedent shall not be barred of his right to enforce the lien against the property by a failure to present his claim and have it probated and registered, but shall be barred of all claim to be satisfied out of the assets not affected by such lien." Miss. Code Ann. § 91-7-167 (Rev. 2018).

11

¶35.    The Supreme Court summarized the impact of this statute on estates just shy of a century ago: "[t]he statute authorizes the enforcement of any and every kind of lien against the particular property affected thereby, without the necessity of probating the claim[.]" *Sandy v. Crump*, 139 Miss. 163, 103 So. 804, 805 (1925). While other claims would expire due to the time-bar of the probate process, a judgment lien would continue to survive, since "the lien of the trust impressed upon the property here involved may be enforced against the property, without first probating the claim against the decedent's estate." *Id*.

¶36.    Our modern precedent follows this approach. In another case, a daughter attempted to combat the foreclosure of her late mother's property by arguing that the bank never submitted their claim on the parcel to probate. *Gandy v. Citicorp*, 985 So. 2d 371, 373 (¶10) (Miss. Ct. App. 2008). However, the bank relied on Section 91-7-167 to argue that its lien did not require even showing up to probate, even though this would "preclude[] the creditor from a claim for any deficiency from the assets of the estate." *Id*. at 374 (¶12).

¶37.    We agreed with the bank, ruling that under section 91-7-167 "it is clear that the filing of the estate did not prevent [the bank] from performing a proper foreclosure on the property." *Id*. at 374 (¶13). Instead, the bank "chose not to probate the claim, forgoing any claim to a deficiency, and continued the foreclosure proceedings on the real estate," which it was allowed under the statute to do. *Id*. at (¶12).

¶38.    In *Gandy*, we properly applied *both* the probate process and the lien statutes, in accord with Supreme Court precedent. For "section 91-7-151 *must be read in conjunction* with

12

section 91-7-167 of the Mississippi Code[.]" *First Nat. Bank of Jackson v. Huff*, 441 So. 2d 1317, 1320 (Miss. 1983) (emphasis added).

¶39. As both the express language of the Code and nearly one hundred years of precedent makes clear, the probate process does not preempt judgment liens, since judgment liens do not need to be submitted to probate *at all* to be enforceable. In other words, a judgment lien would have survived probate regardless of whether a claim was timely filed or not.

### D. The Case at Hand

¶40. In light of this precedent we turn to the facts of this case. Unifund obtained two judgments against Ms. Jordan, both of which were enrolled on the judgment roll in Forrest County and timely renewed. Nonetheless, the daughters of Ms. Jordan did not mail notice to Unifund, instead only publishing notice in the local paper. When Unifund presented its claims to probate, the trial court found they were time-barred as they were not presented earlier.

¶41. However, as set out above, State law does not bar the execution of a judgment lien, as one "may be enforced against the property, without first probating the claim against decedent's estate." *Sandy*, 103 So. at 805. This is in accord with the Legislature's directive that "[a] judgment so enrolled shall be a lien upon and bind *all the property* of the defendant *within the county where so enrolled*[.]" Miss. Code Ann. § 11-7-191 (emphasis added). Here, the chancery court's decision simply did not address the validity of the liens. Instead, the court denied the claim against the estate and found that Unifund's claims based on its two

judgment liens were time-barred.

¶42.    In finding that Unifund's claims were time-barred, the trial court determined that "[t]here is no proof that the executrices had any knowledge of the existence of the default judgments." However, this holding does not comport with precedent that the administrator of an estate must be "reasonably diligent" in fulfilling their duty to determine if there are any known creditors. The statutory duty of the administrator is not whether they "had any knowledge" of a possible claim, but that they must be "reasonably diligent" in learning if there were claims. Indeed, the statute reads that "[s]uch executor or administrator *shall* mail a notice to persons so identified, at their last known address . . . ." Miss. Code Ann. § 91-7-145 (emphasis added). "A basic tenet of statutory construction constrains us to conclude that, unlike the discretionary nature of "may," the word "shall" is a ***mandatory*** directive." *Ivy v. Harrington*, 644 So. 2d 1218, 1221 (Miss. 1994) (strong emphasis by the Court). So when a statute contains the word "shall," the Court has held that "no discretion is afforded the trial judge." *Id*.

¶43.    Nor does the affidavit of the sisters that they "made a reasonably diligent effort to identify all persons, firms or corporations which to my knowledge have or may have claim or claims against the assets of the Estate of Frances M. Jordan" salvage their position that they discharged their statutory duty. For as set out above, the executrices had a *statutory* duty to determine "the type and amount of any encumbrance that may exist with reference to any item." Miss. Code Ann. § 91-7-93. Furthermore, the sisters' blanket affidavit echoes the one

14

by the administratrix in *Petrick* who did not seek out the doctor or clinic, even though the decedent had recently been treated there. In *Petrick*, the administrator at least testified under oath that she had attempted to discharge her duties, though she left them largely to her lawyers and others who were handling matters in the case. That is more than the daughters did here, and it was not enough to meet the burden in *Petrick*.

¶44. In this case, the daughters only provided their own affidavit, which contained zero material facts relevant to how the sisters actually executed their statutory duty to make such a reasonably diligent effort, when they did it, or how. In the presence of two enrolled and renewed judgments against Ms. Jordan in the county of her residence, this self-serving and conclusory affidavit does not meet the burden of reasonable diligence in identifying known creditors. *C.f. Dalton v. Cellular S. Inc.*, 20 So. 3d 1227, 1233-34 (¶14) (Miss. 2009) ("A conclusory, self-serving affidavit, unsupported by material facts relevant to the proposition at issue, is insufficient as a basis to grant summary judgment"); *Currie v. McNeal*, 312 So. 3d 1237, 1244 (¶21) (Miss. Ct. App. 2021) ("a self-serving affidavit does not equate to the type of evidence required to call the 'making of the arbitration agreement' into question"); *Chen v. Shope*, 283 So. 3d 97, 100 (¶9) (Miss. 2019) (when a "conclusory, self-serving affidavit [was] unsupported by material facts" it was "insufficient to support his claim that venue is proper in Hinds County").

¶45. We hold that by merely submitting a self-serving and conclusory affidavit that they had discharged their duties, with nothing more and no description of what method they had

15

undertaken, and no evidence of compliance with the statutory duty to inventory "any encumbrance," the daughters did not establish they were "reasonably diligent" in ascertaining the claims of Unifund.[2]

¶46.    In its order finding Unifund's claims were time-barred, the trial court held that "[r]easonable and diligent effort does not require a ten-year review of the judgment roll." There is no precise definition as to what might be "reasonable," but in the case at hand, it is undisputed that Unifund renewed its two judgments in 2015 and 2016, less than five years before Ms. Jordan passed away. It would not have taken a ten-year review of the judgment roll to find these two judgments. In any event, there was no proof mustered by the co-executrices they performed *any* effort to discharge their duties to be "reasonably diligent" in ascertaining claims against the estate—whether a ten-month review of the judgment roll, or a ten-year review. Therefore it was manifest error to find that the co-executrices were per se "reasonably diligent" merely because they claimed they had been via affidavit.

¶47.    As a reasonably ascertainable creditor, Unifund was due service by mail. The company was not served by mail, and as precedent establishes, the mere publication of notice

---

[2] The separate opinion points out that "our courts are silent regarding what steps an executor must take to exercise reasonably diligent efforts absent fraud or malfeasance." However, the statutory duty to inventory "any encumbrance" as well as the Supreme Court's command in *Petrick* to use reasonable diligence reveals the two daughters fell short of the standard. The sisters did not established they exercised "reasonably diligent efforts." What constitutes "reasonably diligent efforts" will turn on each individual case. Yet here, where there was no proof beyond their bare-bones and conclusory affidavit, the efforts were not reasonable.

does not act as substitute for the required method of service by mail. *See Petrick*, 635 So. 2d at 1393. Furthermore, pursuant to statute, Unifund's judgment liens were not extinguished merely by their late submission to probate, as they "may be enforced against the property, without first probating the claim against decedent's estate." *Sandy*, 103 So. at 805. In reading both the statutes regarding judgment liens and the probate process "in conjunction" with each other pursuant to precedent, *see Huff*, 441 So. 2d at 1320, we find that the trial court's order cannot stand.

¶48. Given the clarity of the applicable statutes and precedent, we reverse the trial court's order finding Unifund's claims are time-barred, render that Unifund is a creditor that was due service by mail and that its two claims must be admitted to probate, and remand for further proceedings in light of this ruling.

¶49. **REVERSED, RENDERED, AND REMANDED.**

**CARLTON AND WILSON, P.JJ., GREENLEE, SMITH AND EMFINGER, JJ., CONCUR. BARNES, C.J., AND LAWRENCE, J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. McDONALD, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY McDONALD, J.**

**WESTBROOKS, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶50. I concur with the majority's decision to reverse the trial court's legal finding that Unifund's judgment claims were untimely; however, I write separately because I disagree with the majority's determination that the chancery court manifestly erred when it found that Unifund was not a reasonably ascertainable creditor and, consequently, that the executors

made reasonably diligent efforts. The law is wanting in this area, and the chancery court made the most equitable decision under the circumstances.

## I. Probate Proceedings

¶51.    Under Mississippi law, the probate process begins for a testate or intestate estate when an attorney files a petition for the appointment of an executor or administrator. *See* Miss. Code Ann. §§ 91-7-3, -63 (Rev. 2018). The fiduciary's attorney also files a petition for issuance of testamentary letters, or letters of administration where the estate is intestate. *See* UCCR 6.01(A); Miss. Code Ann. §§ 91-7-35, -63(1) (Rev. 2018). A chancery court judge is assigned, and a hearing is scheduled. At the hearing, the chancery court judge may issue an order granting the petition and appointing the executor in probate matters. Once the executor has accepted the appointment, then the executor must sign an oath stating that it will carry out its duties. Miss. Code Ann. § 91-7-41 (Rev. 2018). After the administration of the oath, the clerk gives the testamentary letters to the executor. Miss. Code Ann. § 91-7-35.

¶52.    The executor must carry out its duty to identify creditors pursuant to section 91-7-145. Miss. Code Ann. § 91-7-145(1) (Rev. 2018) ("The executor or administrator shall make reasonably diligent efforts to identify persons having claims against the estate . . . ."). These persons, or creditors, must be "known or reasonably ascertainable." *Tulsa Pro. Collection Serv. Inc. v. Pope*, 485 U.S. 478 (1988); 34 C.J.S. *Executors and Administrators* § 561 (updated 2022). If so, then the executor is obligated to mail letters to these creditors notifying them of the open probate proceedings and their time-limit for bringing a claim

18

against the estate. *In re Estate of Petrick*, 635 So. 2d 1389, 1393 (Miss. 1994). For both known and unknown creditors, the executor must give notice by publication for three consecutive weeks. Miss. Code Ann. § 91-7-145(2). It is only when the executor has mailed letters and published notice by newspaper that the executor has provided actual notice to known or reasonably ascertainable creditors. *Petrick*, 635 So. 2d at 1393. However, the executor need only provide notice by publication to unknown creditors. *E.g.*, *Tulsa*, 485 U.S. at 490 ("For creditors who are not 'reasonably ascertainable,' publication notice can suffice.").

¶53. A creditor has ninety days from the date of the first newspaper publication to file its claim against the estate. Miss. Code Ann. § 91-7-151 (Rev. 2018). After the ninety days have passed, the probate attorney then determines which claims were filed. If no claims have been filed, then the probate attorney may petition to close the estate. *See* Miss. Code Ann. § 91-7-295 (Rev. 2018). The chancery court may value and distribute the assets and order that the executor distribute the assets. Miss. Code Ann. § 91-7-297 (Supp. 2019). Once distributed, the chancery court may close the estate. *See id.*

¶54. An issue arises in cases like the one here, when a creditor attempts to file a claim against the estate after the probate proceedings have closed. Generally, a creditor's claims are barred if it failed to bring the claim within the ninety days allotted. This rule, however, does not apply if the creditor can show that it did not receive actual notice of the proceedings. *Tulsa*, 485 U.S. at 491; *Petrick*, 635 So. 2d at 1395.

¶55. Unifund established that it had a valid claim against the estate by presenting its renewed judgment liens against the property of the deceased, Frances M. Jordan, on October 5, 2020. However, the executors of the estate asserted an affirmative defense that Unifund's claims were untimely due to the closure of the probate proceedings on August 6, 2020. The executors argued that because Unifund did not file its claim within ninety days of the newspaper publication issued on April 17, 24, and May 1, 2020, Unifund lost its right to file a claim within the probate proceedings. In contrast, the majority finds that Unifund's claim was not time-barred because Unifund was a judgment-lien creditor excepted from the ninety-day limitation pursuant to Mississippi Code Annotated section 91-7-167 (Rev. 2018). While I agree that Unifund's claim was not barred based on its status as a judgment-lien creditor, I do not agree that the chancery court manifestly erred by finding that Unifund was not a reasonably ascertainable creditor.

## II. Notice to Creditors

¶56. The question before the chancery court was whether the due process requirement to provide actual notice to known or reasonably ascertainable creditors applied to Unifund. The chancery court found that Unifund was not a known or reasonably ascertainable creditor entitled to actual notice. As this was a factual determination, we may only disturb the chancery court's finding if it was made without substantial evidence or was manifestly wrong. *Petrick*, 635 So. 2d at 1394; *Ladner*, 911 So. 2d at 676 (¶14).

### A. Known Creditors

20

¶57. Again, if the creditor is known, then due process requires that the executor mail notice to the creditor. *Tulsa*, 485 U.S. at 481; *Petrick*, 635 So. 2d at 1393. Neither party asserts that Unifund was a "known" creditor, so did the chancery court err by finding that Unifund was not a reasonably ascertainable creditor?

## B. Reasonably Ascertainable Creditors

¶58. "A reasonably ascertainable creditor is one who is discoverable through 'reasonably diligent efforts.'" *Est. of Avakian v. Wilmington Trust Nat'l Ass'n*, 231 So. 3d 208, 215 (¶27) (Miss. Ct. App. 2017) (quoting *Petrick*, 635 So. 2d at 1393); *In re Est. of Ladner*, 911 So. 2d 673, 676 (¶13) (Miss. Ct. App. 2005).

¶59. Our appellate courts have not detailed the beginnings and the ends of the scope of reasonably diligent efforts. In *Petrick*, the Supreme Court held that an executor has four responsibilities:

(1)     she must make reasonably diligent efforts to ascertain creditors having claims against the estate and mail them notice of the 90 day period within which to file a claim;
(2)     she must file an affidavit stating that she has complied with the first subsection;
(3)     she must publish in some newspaper in the county a notice to creditors explaining that they have 90 days within which to file claims against the estate; and
(4)     she must file proof of publication with the clerk of court.

*Petrick*, 635 So. 2d at 1392. Unfortunately, our courts are silent regarding what steps an executor must take to exercise reasonably diligent efforts absent fraud or malfeasance. Unifund argues that reasonably diligent efforts require an executor check the judgment roll

in the clerk's office. The chancery court disagreed and found a mandatory check of the judgment roll was not required. I find no error with the chancery court's determination that Unifund was not a reasonably ascertainable creditor given the lack of authoritative precedent in this area.

¶60.    The statute that outlines how to identify claims against the estate makes no mention of a requirement to check the judgment roll. Miss. Code Ann. § 91-7-145. It requires only that the executor attach an affidavit asserting that it took reasonably diligent efforts. *Id*. However, the majority relies on *Petrick* to assert that the affidavit submitted by the executors is insufficient for the chancery court to have found that the executors took reasonably diligent efforts. *Petrick*, 635 So. 2d at 1395. Even so, where this Court has been uncertain on appeal of whether the executor took reasonably diligent efforts, we have remanded the case back to the trial court for further proceedings. *Ladner*, 911 So. 2d at 676 (¶13). In similar cases, the executor had actual notice of the creditor, and the record revealed that reasonably diligent efforts were not taken on the part of the executor. *Caldwell*, 533 So. 2d 413, 417 (Miss. 1988); *Petrick*, 635 So. 2d at 1395. In *Caldwell*, the ex-husband, Douglas Caldwell, argued that he made reasonably diligent efforts to find the address of his ex-wife, Betty Hall, although the record showed that "telephone calls were being received in Caldwell's home." *Caldwell*, 533 So. 2d at 417. In *Petrick*, the record revealed that the creditor, Chopin, "personally contacted [the executor] Vann [. . . ] regarding the outstanding bill." *Petrick*, 635 So. 2d at 1395.

¶61. In the case at bar, I cannot say that the executors did not make reasonably diligent efforts to identify persons having claims against the estate. There is nothing in the record to suggest that Unifund provided the executors with actual notice of its claim. Nothing in the record shows that the executors were in contact with Unifund via telephone, nor were they personally contacted by Unifund as in *Caldwell* and *Petrick*. While I recognize that the executor has a fiduciary duty to identify creditors, our law as it currently stands does not state that the executor *must* check the judgment roll. With its opinion, the majority has created a new, additional requirement for future executors to follow as they attempt to make reasonably diligent efforts to identify creditors. This is a requirement our Court has expressly declined to obligate chancery clerks to perform, who merely need to "walk across the hall to check judgment rolls." *HL&C Marion LLC v. DIMA Homes Inc.*, No. 2020-CA-00750-COA, 2021 WL 5070556 at *4 (¶13) (Miss. Ct. App. Nov. 2, 2021) (unpublished), *cert. granted*, 2022 WL 1498475 (Miss. Apr. 22, 2022). I do not believe that we cannot expect a person with even less legal acumen to know where to look if the statutory scheme does not expressly state this requirement. Furthermore, the majority finds that there was insufficient proof in the record to support that the executors made a reasonably diligent effort to discharge their duties. I must note, conversely, that there was also nothing in the record to indicate that they *did not* put forth a reasonably diligent effort to discharge their duties. Because nothing in the record supports a lack of diligence, and since the executors followed the letter of the law, I cannot say the chancery court erred when it made a factual finding that their efforts were

23

reasonable.

¶62. In conclusion, without an express requirement that an executor must check the judgment roll, I cannot say that the chancery court erred by finding that the executors used reasonably diligent efforts and that Unifund was not a reasonably ascertainable creditor. For these reasons, I would affirm the chancery court's factual determinations.

**McDONALD, J., JOINS THIS OPINION.**